SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Ten Stary Dom Partnership v. T. Brent Mauro (A-52-11) (069079)**

**Argued November 5, 2012 -- Decided August 5, 2013**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers defendant's entitlement to a bulk variance from a frontage zoning requirement and the appropriateness of affirming an order denying a variance without prejudice.

Defendant T. Brent Mauro owns property in the Borough of Bay Head that fronts on 10.02 feet of Willow Drive. The property is located in a single-family, residential zone that requires frontage of fifty feet. Mauro's property conforms to all other zoning requirements. Mauro's initial building permit application was denied based on a finding that Willow Drive was not a public street. Thereafter, the Borough Council adopted a resolution permitting Mauro to improve Willow Drive to have it certified as a public street. Mauro subsequently filed an application with the Planning Board for a variance to permit a single-family home with frontage of 10.02. At the Board hearings, Mauro testified that he had attempted, but failed, to acquire adjacent land to conform to the frontage requirement. A licensed professional engineer and planner testified, among other things, that a variance denial would make the lot virtually useless and that drainage for the site would be designed in accordance with appropriate engineering standards. Mauro also submitted architectural plans including fire retardant building materials and a fire suppression system, and a New Jersey Department of Environmental Protection (NJDEP) determination authorizing the use of fill on the site and construction of a single-family house pursuant to a Freshwater Wetlands Statewide General Permit. Finally, the Borough's fire chief and his assistant testified that the fire company could adequately respond to an on-site emergency at the property. In a 5-to-4 vote, the Board granted the variance conditioned on completion of improvements to Willow Drive and approval of a stormwater management plan and fire suppression system.

Plaintiff Ten Stary Dom Partnership (Ten Stary Dom), owner of a neighboring property, filed an action in lieu of prerogative writs challenging the Board's action. After the parties confirmed that a voting board member had missed relevant meetings, the trial court remanded the matter to the Board for deliberation and a new vote on the existing record, and retained jurisdiction. In a 5-to-4 vote, a reconstituted Board denied the frontage variance. The Board found that there was not sufficient access to permit the fire department to respond to a fire on the applicant's property; that the property is "in a natural wetland condition," as designated by the NJDEP, and serves as a drainage collector for surrounding properties; and that Mauro failed to provide engineering data addressing a recharge system for the property or the amount of fill required. The Board concluded that the application did not promote the appropriate use of the land, did not secure safety from fire and flood, did not provide sufficient space for a residential use, and did not promote a desirable visual environment or provide adequate light, air, and open space. The Board determined that a variance would not advance the purposes of the zoning ordinance and that its denial of a variance would not result in undue hardship to Mauro.

The Law Division found that Mauro established the positive criteria but failed to establish the negative criteria to support a variance. Primarily citing the inadequacy of the evidence concerning drainage on the property, the court found that Mauro failed to carry his burden of proof that reduced frontage would not undermine the zoning plan of the community. The trial court, however, affirmed the Board's denial of the variance without prejudice, thereby permitting the applicant to return to the Board with the same application on the same or additional evidence. Both parties appealed. The Appellate Division reversed, concluding that Mauro presented sufficient evidence to support the negative and positive criteria for the variance and that the Board's findings were not supported by the record. The panel found that Mauro was not obligated to address drainage at the time of the variance approval because drainage is an issue relevant to obtaining subsequent site plan review. The panel did not reach the propriety of the trial court's denial without prejudice because it found that the variance should have been approved. This Court granted Ten Stary Dom's petition for certification. 209 N.J. 96 (2011).

**HELD**: Defendant satisfied the positive and negative criteria and is therefore entitled to a bulk variance from a frontage zoning requirement. The trial court's affirmance of the Board's denial of the variance without prejudice violated the principle of res judicata.

1. Bulk or dimensional provisions of a zoning ordinance control lot size and building location on a parcel of land. N.J.S.A. 40:55D-70(c)(1) permits a variance from a bulk requirement, such as frontage, when, by reason of the property's conditions, strict application of the requirement would present peculiar and exceptional practical difficulties or undue hardship to the applicant. Efforts made to bring the property into compliance with the ordinance are relevant to hardship. An applicant for a (c)(1) variance must satisfy the negative criteria, which requires proof that the variance will not result in substantial detriment to the public good or substantially impair the purpose of the zoning plan. N.J.S.A. 40:55D-70(c)(2) permits a variance if the deviation from bulk or dimensional provisions would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment. The positive criteria include proof that the characteristics of the property present an opportunity to put the property more in conformity with development plans and advance zoning purposes. The applicant bears the burden of proving both the positive and negative criteria. (pp. 15-18)

2. An application for a (c)(1) or (c)(2) bulk variance often implicates purposes of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, including promoting public health; minimizing threats from disasters; providing adequate light, air, and open space; and promoting a desirable visual environment. Evaluation of a bulk variance request, however, must be directed to the specific zoning purposes actually implicated by the request. For example, preservation of light, air, and open space may be a valid inquiry in assessing a variance from setback requirements, and a variance from lot coverage requirements may implicate drainage and flood concerns. A minor deviation from a height restriction, however, may have no impact on the valid goal of maintaining sufficient undeveloped area on a lot to foster light, air, and open space. A planning board's decision is presumptively valid. The party challenging the action of a planning board carries the burden of demonstrating that the board acted arbitrarily, capriciously, or unreasonably by making a decision not supported by the record. (pp. 18-22)

3. The Board's findings lack support in the record in all critical respects. Without a variance, the property cannot be developed for residential use, the only permitted use in the zone. Mauro's attempts to cure the nonconformity by acquiring adjacent property failed. The Board also disregarded Mauro's obligation to improve Willow Drive, which addresses in part the ability of fire personnel to access the site; the testimony of the fire chief and his assistant that the fire company could adequately respond to an on-site emergency; that the plans incorporate a fire suppression system and fire retardant materials; and that the NJDEP issued a general permit to bring fill onto the property. In addition, the Board ignored that the property conformed in all respects, except frontage, to the zoning ordinance for single-family homes. Presumably, the Borough has already determined that a residence constructed on a lot the size of the applicant's meets all setback and height requirements and promotes and provides adequate light, air, and open space, and a desirable visual environment. The Board's findings fail to demonstrate how a ten-foot frontage rather than a fifty-foot frontage would constitute a substantial detriment to the zoning plan. (pp. 23-28)

4. The Board afforded undue weight to the drainage factor in evaluating whether a variance from the frontage requirement undermined the Borough's zoning plan. Although drainage and the risk of flooding are legitimate zoning concerns, Mauro's plan is not a development proposal that would add many more units to an existing space. The property conforms to the zoning plan's single-family residential use. The Board delved into concerns that can be adequately addressed in another way. A property owner who seeks to construct a house on a residential lot must apply for a building permit. See N.J.S.A. 52:27D-130. The municipal building official determines whether the property owner's plans conform to the municipal building standards, including proper drainage and elevation to minimize the impact of flooding. Thus, the drainage concerns will be considered during the building permit process. The record does not support that Mauro failed to establish the positive or negative criteria for a (c)(1) or (c)(2) variance. (pp. 28-30)

5. The trial court's denial without prejudice, which permitted Mauro to return to the Board with the same application on the same or additional evidence, ignored the principle of res judicata. Res judicata bars resubmission of the same proposal following a dispositive ruling by a planning board. In this case, it was incumbent on the judge to affirm, reverse, or modify the decision of the Board. (pp. 30-32)

The judgment of the Appellate Division is **AFFIRMED AS MODIFIED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, HOENS, and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.**

2

TEN STARY DOM PARTNERSHIP,

    Plaintiff-Appellant,

       v.

T. BRENT MAURO and
THE BOROUGH OF BAY HEAD
PLANNING BOARD,

    Defendants-Respondents.

        Argued November 5, 2012 – Decided August 5, 2013

        On certification to the Superior Court,
        Appellate Division.

        Joseph Michelini argued the cause for
        appellant (O'Malley Surman & Michelini,
        attorneys).

        Steven A. Zabarsky argued the cause for
        respondent Borough of Bay Head Planning
        Board (Citta, Holzapfel & Zabarsky,
        attorneys; Mr. Zabarsky and Christian E.
        Schlegel, on the letter in lieu of brief).

        Richard H. Woods argued the cause for
        respondent T. Brent Mauro.

    JUDGE CUFF (temporarily assigned) delivered the opinion of

the Court.

    This appeal arises in the context of a ten-year attempt by

the owner of a residential lot to build a house. We review a

judgment of the Appellate Division reversing the denial of an

application for a variance, without prejudice, from the frontage

requirement in the zone and ordering issuance of a bulk variance. This appeal permits us to address the weight to be accorded site-specific conditions, such as drainage, when the proposed development conforms to the zoning requirements in all respects but frontage. We also address the appropriateness of affirming an order denying a variance without prejudice.

I.

Defendant T. Brent Mauro owns a lot in the Borough of Bay Head (Borough). The lot is fifty feet by ninety-five feet and located on Willow Drive, a 500-foot long passage best described as a lane or alley. Garages for the homes fronting on the streets north and south of Willow Drive line the lane. Mauro's property is situated at the end of the lane and fronts only on 10.02 feet of Willow Drive.

The property is located in a single-family, residential zone that requires frontage of fifty feet. The property conforms to all other zoning requirements, including lot size, and the proposed residence conforms to all setback and height requirements of the zone. Three easements, which benefit the property, one for emergency access and two for utilities, traverse neighboring properties. The property is unimproved and accepts natural drainage from the neighboring properties and Willow Drive.

2

Mauro's attempt to build a single-family house on the lot commenced in 2002. In September 2002, the Borough Attorney rendered an opinion that Willow Drive was not a municipal street; as a result, the zoning officer denied Mauro's application for a building permit. See N.J.S.A. 40:55D-35 (requiring lot to abut public street for building permit to issue). Mauro filed an action in lieu of prerogative writs challenging that decision. The matter was resolved when the Borough Council adopted a resolution on January 17, 2006, permitting Mauro to improve Willow Drive in accordance with the engineering specifications utilized to improve another street in the Borough. The Borough Council directed that, if improved in accordance with those specifications, Willow Drive would be certified as a public street. A January 3, 2006 order in the action contesting the 2002 denial of the building permit provided that Mauro "will be entitled to a building permit subject to improvement of Willow Drive in accordance with the governing body's requirements, and [Mauro] obtaining a frontage variance and any other variances, if required by the Planning Board."

Mauro filed an application with defendant the Borough of Bay Head Planning Board (Planning Board or Board) for a bulk variance pursuant to N.J.S.A. 40:55D-70(c) to permit development of the property with a frontage of 10.02 feet rather than the

3

required fifty feet.  The Board conducted hearings on three dates:  August 15, 2007; September 19, 2007; and November 28, 2007.  Mauro testified that the proposed single-family dwelling would meet all bulk requirements other than frontage.  He testified that he had attempted, but failed, to acquire additional land from neighboring property owners to conform to the frontage requirement.  He also testified that his discussions with neighboring property owners to purchase his lot had "come to a halt."

Mauro presented testimony from Robert Burdick, a licensed professional engineer and professional planner, who confirmed that the best use of the property was single-family residential.  Burdick also stated that "the denial of the variance would certainly represent an exceptional and undue hardship on [Mauro] . . . by making the lot virtually useless."  He confirmed that the lot and the proposed single-family house conformed in all other respects to the zoning ordinance and that the easement for emergency access and the access provided by Willow Drive would permit response by emergency vehicles and personnel to an emergency on the property.  Finally, Burdick testified that the drainage for the site would be designed in accordance with appropriate engineering standards and that runoff would not flow onto the neighboring properties.

4

Mauro submitted a determination from the New Jersey Department of Environmental Protection (NJDEP) authorizing the use of fill on the site and construction of a single-family house pursuant to a Freshwater Wetlands Statewide General Permit. Mauro also submitted architectural plans for the proposed house. The specifications included a fire suppression system and use of fire retardant building materials.

The Board subpoenaed two witnesses to address fire safety. William Vander Noot, Chief of the Bay Head Fire Company, conceded that only one truck could be brought down Willow Drive, but he also testified that fighting a fire on the subject property would not necessarily be more dangerous than on any other property. William Boyle, Assistant Chief, concurred with Vander Noot. Both men stated that the installation of residential sprinklers in the proposed structure, the use of fire retardant building materials, and the installation of a fire hydrant on Willow Drive, as required by the road improvements, would assist fighting a fire on the property.

Several members of the public opposed the variance. A member of plaintiff Ten Stary Dom Partnership (Ten Stary Dom), owner of a neighboring property, expressed concerns about the recharge system and stormwater run-off onto adjacent properties, the aesthetic impact of a ten-foot frontage, the after-

5

improvement width of Willow Drive, safety of children playing on Willow Drive, and fire safety.

On November 28, 2007, in a 5-to-4 vote, the Board granted the variance. The Board conditioned the variance on completion of improvements to Willow Drive and further provided that a building permit could not issue until completion of those improvements. In addition, the house constructed on the property was required to conform to the plans submitted in support of the variance, the Board Engineer's approval of the stormwater management plan was necessary, and a fire sub-code official's approval of the fire suppression system installed in the structure was required. In its resolution, the Board determined that failure to grant the variance would result in undue hardship to Mauro and that the variance could be granted without undue detriment to the public good and would not "impair the intent and purpose of the zone plan, master plan and/or zoning ordinances." The resolution incorporated the following findings of fact:

> 2. The application for development does not block the light, air or space of any adjacent property owners based upon the dimensions of the house as provided for in the elevation and architectural plans as well as the placement of the house, and, therefore, providing for the setbacks as established during the testimony.
>
> 3. The property . . . has an exceptional and unique configuration in that it only has

10 feet of frontage on Willow Drive which is a preexisting, non-conforming condition and also constitutes an extraordinary and exceptional situation uniquely affecting the specific piece of property which results in peculiar and exceptional practical difficulties and undue hardship to the Applicant.

. . . .

5. The application for development and the lot itself completely conforms to all the zoning requirements of the [Borough] except for lot frontage.

6. . . . [T]here are adequate provisions for emergency services to be provided to the subject property . . . .

7. The proposed application for development will contribute to the desirable visual environment of the neighborhood as the aesthetics of the house proposed are consistent with those houses in the [Borough] and the surrounding neighborhood.

## II.

Ten Stary Dom filed an action in lieu of prerogative writs challenging the Board's action. It argued that the Board acted arbitrarily, capriciously, and unreasonably by granting the frontage variance. Ten Stary Dom also asserted irregularities in the Board proceedings approving the variance, specifically the participation of a member who had not attended all of the meetings and had not read the transcripts or listened to tapes of the proceedings. After all parties confirmed that

7

allegation, the trial court remanded the matter to the Board for deliberation and a new vote on the existing record.

On December 19, 2009, a reconstituted Board[1] considered the application on the same record compiled by the applicant in support of his August 2006 variance application. The Board, by a 5-to-4 vote, denied the frontage variance. The Board founded its decision on concerns expressed by neighboring property owners about drainage and the water recharge system. The Board also cited fire safety and aesthetic concerns. In its January 20, 2010 resolution, the Board determined that the failure to grant the variance would not result in undue hardship to the applicant and the purposes of the zoning ordinance would not be advanced by a deviation from the zoning ordinance. The resolution incorporated the following findings of fact:

> 1. The subject property in question is located at the dead end of a 500 foot alley, subject to the requirement of constructing a road, with a width arguably between 18 and 20 feet. Therefore, for emergency purposes, only one (1) fire truck or such other emergency vehicle can access the site to the exclusion of all others. When fighting a fire, the usual three (3) fire trucks which respond to a fire will only be able to fight the fire with one (1) truck on Willow Drive and the other emergency vehicles located on either Park Avenue or Bridge Avenue. This poses a substantial risk to the improvements located

---

[1] During the period between the adoption of the November 2007 resolution and remand, there had been a change of membership on the Board.

on the property as well as any persons located at the property at the time of a fire or emergency due to the limited access to the property. Further, if there is a vehicle parked on Willow Drive at the time of a fire, there will be no access whatsoever for a fire truck to be parked adjacent to the property to fight a fire.

2. The subject property is designated by the New Jersey Department of Environmental Protection as a wetland property. The property is in a natural wetland condition and, during rain, the property is known as "the swamp". In addition, water runs down Willow Drive toward the subject property and accumulates run off from other adjacent properties as well. There have been no calculations provided to the Planning Board as to how a recharge system would actually be designed and/or work successfully with regard to the subject property. There have been no calculations provided to the Planning Board with regard to the amount of fill which will be necessary, nor topographic surveys or soil investigations performed to determine the exact elevation which will result from filling of the wetland on the property, as well as the design of a recharge system so that all storm water which runs onto the property or is on the property shall be recharged into the ground and not further run off to any adjacent property owners or onto Willow Drive.

3. The subject property is surrounded by six (6) residential houses. To the north side of the property, there are three (3) residential houses which have rear yards extending to what will be the subject property's side yard. In addition, to the southern portion of the property, there are two (2) houses which have rear yards which, again, will abut to the side yard of the subject property. Finally, located in the

9

very front yard of the property, will be another residential dwelling.

4. The subject property has only 10 feet of lot frontage on a 20 foot wide alley/road which greatly prohibits access to the subject property, having only 20% [] of the necessary 50 feet of road frontage pursuant to the Borough of Bay Head Land Use Ordinance.

5. The application for development does not promote the purposes of zoning under the State Municipal Land Use Law and, more specifically, does not:

A. Encourage an appropriate use or development of land which promotes the public health, safety and general welfare.

B. Secure safety from fire and flood.

C. Provide sufficient space for a residential use according to environmental requirements in order to meet the needs of the homeowners of the adjacent properties.

D. Promote a desirable visual environment.

E. Provide adequate light, air and open space.

The Law Division had retained jurisdiction when it remanded the matter to the Board. Thus, Mauro filed a petition with the Law Division to review the January 20, 2010 resolution. Mauro asserted that the denial of the variance was arbitrary, capricious, and unreasonable because the findings were inconsistent with the Board's previous findings. He also

10

contended that the denial of the variance constituted a taking of his property without just compensation.

By order dated July 13, 2010, the Law Division affirmed the action of the Board without prejudice. The order provided that Mauro "shall have the right to file a new application with the Board seeking the same or such other relief" to permit development of the property. In his June 17, 2010 oral opinion, the judge determined that Mauro had not carried his burden to establish the negative criteria to support a variance. That is, Mauro failed to carry his burden of proof that reduced frontage would not undermine the zoning plan of the community. The judge further explained that the critical inadequacy of Mauro's proof concerned drainage. The judge stated:

> This court finds that the Board's denial of the application in the face of the absence of critical evidence presented is neither arbitrary nor unreasonable. [Mauro's] application might have been more persuasive if the only issue was fire safety. Such a denial in the face of relatively uncontroverted testimony might arguably be arbitrary and unreasonable. However, the Board's denial on the issue of drainage and water displacement is neither arbitrary nor unreasonable. This is because the Board has the legal right to require proofs regarding drainage and water displacement. See Field [v. Mayor & Council of Franklin, 190 N.J. Super. 326 (App. Div.), certif. denied, 95 N.J. 183 (1983);] Morris C[nty.] Fair Hous. [Council v. Boonton Twp., 230 N.J. Super. 345 (App. Div. 1989)].

11

The judge explained, however, that the denial was without prejudice "because the case in and of itself is relatively unusual and unique in its history." He reasoned that a new, fully constituted Board should have the opportunity to hear the application anew, address questions to the witnesses, and "determine for itself whether[,] in addition to meeting the safety concerns, the potential flooding in adjacent properties could be adequately addressed by applying reasonable and appropriate engineering principles and design." The judge also expressed a concern that the remand procedure adopted by the court, which confined the remand to the record compiled in 2007, did not permit "a fair exchange with the Board," particularly relating to the drainage issues on the site and in the neighborhood.

III.

Ten Stary Dom appealed the Law Division's decision affirming without prejudice the Board's denial. Mauro cross-appealed, similarly challenging the Law Division ruling that the denial was without prejudice and also disputing the decision affirming the Board's denial.

The Appellate Division concluded that the Board's findings of fact and expressed reasons for denying the variance were insufficient. The panel found that drainage is an issue relevant to obtaining site plan approval rather than a zoning

12

variance and that Mauro was not obligated to convince the Board such a plan existed at the time of the bulk variance approval. The panel determined it was "unreasonably speculative to consider a possible component of [Mauro's] future drainage plan when denying his requested variance." Finally, the panel declined to reach the denial without prejudice because it found that the variance should have been approved. Accordingly, the Appellate Division reversed the denial of the variance, finding that Mauro presented sufficient evidence to support the variance and concluding that the Board acted unreasonably by denying the requested relief. The panel remanded for the grant of the bulk variance. This Court granted Ten Stary Dom's petition for certification. 209 N.J. 96 (2011).

IV.

Ten Stary Dom contends that N.J.S.A. 40:55D-37(a) establishes that applications for single-family homes are exempt from site plan review and approval by a planning board. Accordingly, it maintains the Appellate Division incorrectly found that drainage issues could be considered by the Board during the site plan approval process. Ten Stary Dom also argues that, in finding drainage is an improper consideration for a variance request, the Appellate Division denied the Board the "sole opportunity to engage in meaningful review of all aspects of the application," that those concerns are the sole

13

province of the Board, and that the Appellate Division erred by shifting review of drainage issues to the site plan review stage. It also argues the Appellate Division impermissibly substituted its own judgment for that of the Board in deciding to grant Mauro's application as there was sufficient evidence in the record to support the Board's conclusion that Mauro failed to make a sufficient showing of hardship.

Mauro concedes that the Appellate Division improperly stated his development plan was subject to site plan review; however, he maintains that the "misstatement" was dictum and does not undermine the heart of its decision. Mauro argues that the panel's remand to adopt a resolution granting approval was based on the panel's finding that he met both the positive and negative criteria required by the statute.

The Board argues its findings of fact and conclusions of law amply support its finding that the applicant failed to satisfy his burden of proving the negative criteria. The Board contends Mauro failed to provide adequate testimony regarding numerous issues related to the variance, including how the drainage and recharge system would work and whether the proposed structure conflicted with the character of the neighborhood. Additionally, the Board maintains that the decision to deny the application without prejudice was proper, noting that, given the conflicting decisions on the same record, it would be

14

"fundamentally unfair to deny [d]efendant Mauro the opportunity to resubmit his application to the current Board and be heard anew" and would deny Mauro due process.

V.

Provisions in a zoning ordinance that control the size and shape of a lot and the size and location of buildings or other structures on a parcel of property are known as bulk or dimensional requirements.  See N.J.S.A. 40:55D-65(b) (authorizing zoning ordinance to regulate bulk, height, orientation, and size of buildings and other structures).  See also Morris Cnty. Fair Hous. Council, supra, 230 N.J. Super at 353 (noting that "bulk area and yard requirements, density, distance between buildings, off-street parking and floor area ratio" are not design requirements but ordinance requisites from which deviations require variance).  Many ordinances dictate a minimum amount of frontage required on a public street and provide that a building permit may not issue to erect any building or structure on a lot that does not front a public street.  N.J.S.A. 40:55D-35.  Here, after the applicant agreed to improve Willow Drive in accordance with standards prescribed by the Board Engineer and the governing body agreed to accept Willow Drive as a public street, Mauro applied for a bulk variance from the ordinance requiring fifty feet of frontage on a public street.  We, therefore, commence our discussion with

15

the standard to be applied by a planning board to an application for a bulk variance.

N.J.S.A. 40:55D-70(c)(1) permits a variance from a bulk or dimensional provision of a zoning ordinance, such as frontage, when, by reason of exceptional conditions of the property, strict application of a bulk or dimensional provision would present peculiar and exceptional practical difficulties or exceptional hardship to the applicant. Such exceptional conditions may include the dimensions of the property, topographic conditions, or some other extraordinary or exceptional feature unique to the property. Ibid. Undue hardship does not include personal hardship to the property owner. Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 590 (2005). Rather, it refers to the particular condition of the property. Ibid. Hardship, however, is not synonymous with complete inutility due to the land use restriction, Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 561-62 (1988), although the inability to use the property for any productive use absent a variance often informs the decision to grant a variance from bulk requirements, Chirichello v. Zoning Bd. of Adjustment of Monmouth Beach, 78 N.J. 544, 557-58 (1979).

An applicant who pursues a variance under N.J.S.A. 40:55D-70(c)(1) must establish that the particular conditions of the property present a hardship. The efforts made to bring the

16

property into compliance with the ordinance are factors that must be considered. Jock, supra, 184 N.J. at 594; Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 606 (1980). Those efforts may include attempts to acquire additional land or offers to sell the nonconforming lot to adjacent property owners. Jock, supra, 184 N.J. at 594.

In addition, an applicant for a (c)(1) variance must satisfy the negative criteria. Nash v. Bd. of Adjustment of Morris Twp., 96 N.J. 97, 102 (1984). The negative criteria require proof that the variance will not result in substantial detriment to the public good or substantially impair the purpose of the zoning plan. Ibid.

N.J.S.A. 40:55D-70(c)(2) permits a variance for a specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment. The applicant bears the burden of proving both the positive and negative criteria. Nash, supra, 96 N.J. at 106.

For a (c)(2) variance, approval must be rooted in the purposes of the zoning ordinance rather than the advancement of the purposes of the property owner. Kaufmann, supra, 110 N.J. at 562-63. Thus, the positive criteria include proof that the characteristics of the property present an opportunity to put the

17

property more in conformity with development plans and advance the purposes of zoning. Id. at 563-64. As with the (c)(1) variance, the negative criteria include proof that the variance would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan. Id. at 565.

An application for a bulk or dimensional variance pursuant to either N.J.S.A. 40:55D-70(c)(1) or (c)(2) often implicates several purposes of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, including to encourage a municipality to guide development of land in a manner that will promote the health, safety, and welfare of its residents, N.J.S.A. 40:55D-2(a); to minimize or control threats to the public safety from "fire, flood, . . . and other natural or man-made disasters," N.J.S.A. 40:55D-2(b); and to provide "adequate light, air, and open space," N.J.S.A. 40:55D-2(c). A municipality is also authorized to guide development that will promote "a desirable visual environment," N.J.S.A. 40:55D-2(i), and to establish "appropriate population densities," N.J.S.A. 40:55D-2(e).

In Kaufmann, supra, a planning board granted a variance permitting a subdivision of an over-sized lot into two lots "marginally insufficient in respect to frontage and side-yard requirements" but fully consistent with all other bulk requirements in the zone. 110 N.J. at 563, 565. The Law Division reversed the action of the planning board, and an

18

appellate panel affirmed.  Id. at 556.  This Court determined that the application presented a situation representative of the purpose of the newly-enacted (c)(2) provision because the subdivision plan with minor deviations from the bulk requirements in the zone permitted two lots harmonious in size with neighboring properties when balanced against little, if any, harm to the zone plan.  Id. at 565.

A variance from bulk requirements in a zoning ordinance often arises in the context of an isolated nonconforming lot. Frequently, such applications concern an undersized lot.  One commentator has observed that "[a]n isolated undersized lot is almost always entitled to a dimensional variance."  36 New Jersey Practice, Land Use Law § 15.9, at 364 (David J. Frizell) (3d ed. 2005); see also Jock, supra, 184 N.J. at 575 (noting undue hardship due to undersized nature of lot); Harrington Glen, Inc. v. Mun. Bd. of Adjustment of Leonia, 52 N.J. 22, 28 (1968) (discussing right to relief from zoning ordinance for undersized lot).  Nonetheless, the applicant must still satisfy the positive and negative criteria for either a (c)(1) or (c)(2) variance.

Site conditions, including access and drainage, are valid considerations of a board when the relief requested implicates those conditions.  In Chirichello, supra, this Court recognized that the magnitude of the deviation from the bulk or dimensional requirements of the zoning ordinance and the impact on the

19

zoning plan are often a matter of degree and that a board's consideration of a variance should recognize that fact. 78 N.J. at 561. We stated:

> We have also adverted to the fact that an impingement of the zoning restrictions may be of varying degrees. The less of an impact, the more likely the restriction is not that vital to valid public interests. Conversely, where the change sought is substantial, the applicant will have to demonstrate more convincingly that the variance will not be contrary to the public good and general welfare expressed in the ordinance.
>
> [Ibid.]

In other words, care must be taken to direct the evaluation of a request for a bulk variance to those purposes of zoning that are actually implicated or triggered by the requested relief. However, not every deviation from prescribed bulk standards implicates the same concerns.

Thus, if an applicant seeks a variance from setback requirements, traditional zoning concerns such as preservation of light, air, and open space may be valid inquiries in an assessment of the impact of the requested variance. If an applicant seeks a variance from lot coverage requirements, drainage may be a valid inquiry in an assessment of the impact of the requested variance on the surrounding properties. Similarly, a subdivision application that will create additional lots and permit intensified development of the property prompts

examination of traditional zoning purposes, including light, air, open space, access, and drainage. For example, in Field, supra, the Appellate Division outlined the authority of a board or municipal governing body to delve into the details of drainage and sanitary sewer facilities in the context of an approval of a 396.5 acre tract for a planned unit development (PUD). 190 N.J. Super. at 328-29. As proposed, the PUD would consist of 1332 townhomes and 1332 garden apartment units, commercial development on 19.85 acres, and open space on 99.36 acres. Id. at 328. It is in that context that the Appellate Division stated that

> [i]t is evident that a municipality cannot guide the use and development of lands in this state if fundamental elements of a development plan are left unresolved before preliminary approval, leaving them instead for an unspecified later day. . . . Certain elements -- for example, drainage, sewage disposal and water supply -- may have such a pervasive impact on the public health and welfare in the community that they must be resolved at least as to feasibility of specific proposals or solutions before preliminary approval is granted. . . . If the applicant fails to provide sufficient information on the fundamental elements of his plan, preliminary approval should be denied.
>
> [Id. at 332-33.]

On the other hand, some variances from prescribed bulk requirements may not implicate some of the otherwise valid zoning purposes advanced by other bulk variances. For example,

21

a minor deviation from a height restriction has no impact on lot coverage and the valid goal of maintaining sufficient undeveloped area on a lot to foster light, air, and open space. A deviation from prescribed lot frontage may have no impact on any valid zoning purpose other than the stated public interest in location of all lots on a public street. See Kaufmann, supra, 110 N.J. at 564-65 (finding lots with deficient frontage not unharmonious with neighboring properties).

Finally, we acknowledge the wide latitude accorded to a municipal planning board in the exercise of its delegated discretion. A board's decisions are presumptively valid, and a court may not substitute its own judgment for that of the board unless there has been a clear abuse of discretion by the board. Id. at 558; Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987). The party challenging the action of a planning board carries the burden of demonstrating that the board acted arbitrarily, capriciously, or unreasonably. Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of a grant or denial of a variance are not supported by the record, ibid., or if it usurps power reserved to the municipal governing body or another duly authorized municipal official, Leimann v. Bd. of Adjustment of Cranford, 9 N.J. 336, 340 (1952).

22

Applying those principles, we conclude that Mauro satisfied both the positive and negative criteria to obtain a variance from the frontage regulations of the zone. In focusing on the failure of the applicant to present an engineering plan calculated to solve the identified drainage issue on the lot, the Board and trial court misperceived the weight to be afforded to that factor in evaluating whether a variance from the frontage requirements of the zone undermined the zoning plan of the Borough. That focus also ignored the authority of the Board to impose conditions, such as submission of a satisfactory plan to address on-site drainage issues, for issuance of a building permit. In addition, the Board's findings in all critical respects lack support in the record.

In its second resolution, the Board found that the improved lane still did not afford sufficient access to permit the fire department to respond to a fire on the applicant's property. The Board also found that the property is "in a natural wetland condition," as designated by the NJDEP, and that the property serves as a drainage collector for surrounding properties. The Board cited the absence of engineering data addressing a recharge system for the property or the amount of fill required or topographic surveys or soil surveys. It, therefore, concluded that the application did not promote the appropriate

use of the land, did not secure safety from fire and flood, did not provide sufficient space for a residential use, and did not promote a desirable visual environment or provide adequate light, air, and open space.

The trial court determined that Mauro satisfied his burden of proving that the property has an exceptional and unique configuration that presents a peculiar and undue hardship to him. In doing so, it found that critical findings made by the Board in support of its resolution had no support in the record. The court accepted as unrebutted that the property would be rendered useless without a variance from the frontage requirement. The trial court also recognized that the improvement of Willow Drive by the applicant would address the public safety requirements of health, safety, and welfare. The trial court cited the unrefuted testimony of the fire chief that fire equipment suitable to fight a fire on the premises could gain access to the property by the improved drive and from public streets to the north and south of the property. The court acknowledged that Mauro's property meets all other requirements of the R-50 zone. Finally, the trial court concluded that Mauro had made efforts to bring the property into conformity by offering to buy adjacent property or by offering to sell his property to adjacent owners.

The Appellate Division determined that the trial court did not exceed its authority in its review of the Board's findings regarding the positive criteria. The panel agreed that the critical findings undergirding the Board's evaluation of Mauro's evidence concerning the configuration of the lot, the hardship presented by the physical characteristics of the lot, and the furtherance of the purposes of the zoning plan by the requested relief were not supported by the record. Our review of the record underscores the correctness of the determination by the Appellate Division and the trial court that the Board's findings of fact regarding the applicant's satisfaction of the positive criteria were not supported by the record.

To be sure, the deviation from the frontage provision in the ordinance is substantial in this case. The size of the deviation, however, illustrates the unique and exceptional character of the property. The magnitude of the discrepancy between the required frontage and the actual frontage of the property also informs the critical question of hardship because, without a variance, the property cannot be developed for residential use, the only permitted use in the zone. There is no suggestion in the record of any other permitted use of the property in its current condition. Nor is there any suggestion that the applicant did not make a good faith effort to cure the nonconformity by acquiring adjacent property or to alleviate the

25

need for variance relief by selling his property to adjacent property owners.

The Board's findings also disregarded the obligation imposed on the applicant by the municipal governing body to improve Willow Drive. Pursuant to the terms of the January 17, 2006 resolution, any development of the property must be preceded by improvement of Willow Drive in accordance with standards that permit the Borough to accept it as a public street. The satisfaction of that antecedent act addresses in part the ability of fire apparatus to gain access to the site to fight a fire or for any other emergency situation. Yet, the Board ignored the improvement of the drive, the testimony of the fire chief and his assistant that the fire company from the Borough and neighboring towns could adequately respond to any on-site emergency, and the plans for the house to be constructed on the subject property incorporating a fire suppression system and fire retardant materials.

The Board's findings that development of the property would not provide adequate light, air, or open space disregard the fact that the property conformed in all respects, except frontage, to the zoning ordinance for single-family homes in the R-50 zone. Presumably, the Borough has already determined that a residence constructed on a lot the size of the applicant's meets all setback and height requirements and promotes and

26

provides adequate light, air, and open space, and a desirable visual environment.

The trial court determined, however, that the applicant failed to provide adequate information to address drainage and water displacement. According to the court, that omission justified a finding that the applicant failed to carry his burden that the reduced frontage would not undermine the zoning plan of the community. The Appellate Division determined that the applicant had no obligation to convince the Board that a drainage plan existed. The panel observed that drainage is typically a matter for site plan review and the bulk variance requested here could be conditioned on later approval of a proper drainage plan.

The Board and the objector contend that the Appellate Division founded its decision on a misstatement of the law. They emphasize that, contrary to the panel's statement, Mauro is not required to seek site plan review for development of a single lot. That misstatement, however, does not undercut the validity of the panel's opinion, because a property owner who seeks to construct a house on a residential lot must apply for a building permit. See N.J.S.A. 52:27D-130. The building official, in turn, is required to determine whether the building plan conforms to all requirements to construct a home, including a proper drainage plan and proper elevation to minimize the

impact of flooding.[2]  See N.J.S.A. 52:27D-131(a); N.J.A.C. 5:23-2.15A.

We, as the Appellate Division did, determine from our review of the record that the ultimate finding that the proposed variance and subsequent development would result in substantial detriment to the public good or zone plan is not supported by the record.  For example, the Board found that the property is in a natural wetland condition but disregarded the issuance of a general permit by the NJDEP to bring fill onto the property.  The Board's findings also fail to demonstrate how a ten-foot

---

[2]  The trial court's reliance on Field and Morris County Fair Housing Council may have contributed to the appellate panel's misstatement about the availability of site plan review.  In Field, supra, an application for a PUD on almost 400 acres justified the board's close examination of sewage and drainage.  190 N.J. Super. at 328, 333-34.  Such close attention is hardly applicable to the development of a lot in a residential zone that conforms in all respects to local zoning requirements but for the lack of sufficient frontage on a public street.
Similarly, in Morris County Fair Housing Council, supra, the Appellate Division recognized that the appearance of a house to be built on a nonconforming lot was a legitimate concern to a board when considering whether to grant a "c" variance.  230 N.J. Super. at 357.  Yet, the panel also determined that appearance was irrelevant when the relief requested, i.e., a bridle path and conservation easement in place of a fifty-foot landscaped buffer, would effectively screen the proposed development in a different manner.  Id. at 350, 357-58.  In other words, a board cannot use the occasion of a request for a waiver of a site plan regulation or a request for a variance from a density provision of an ordinance to delve into areas not implicated by the application or which can be adequately addressed in another fashion.

frontage rather than a fifty-foot frontage would constitute a substantial detriment to the zone plan.

Here, the record reveals that the Board utilized the occasion of a request for a variance from a density standard to delve into other concerns that can be adequately addressed in another fashion. It is not that drainage and the risk of flooding are not legitimate zoning concerns. Mauro's plan, however, is not a development proposal that would add many more units to an existing space. The property is zoned for single-family residential use and conforms in all respects to the zoning standards for the zone but for the required frontage on a public street. Except for that deficiency, Mauro could apply for a building permit. It would then be incumbent on the municipal building official to determine if the plans submitted by the property owner conform with building standards in the town, including access to water, sewer, stormwater drainage, electric, and gas. It is in that context the municipal building official could address whether the soil would support the proposed foundation and the impact on surrounding properties of the fill authorized by the general permit that the NJDEP issued. It is in that context the municipal building official also may determine whether the proposed plans conform to other municipal building standards, such as any elevation standards adopted by the municipal governing body for new or substantially damaged

29

residences in the town.  Recognizing the authority of the municipal building official, the Board could have conditioned the variance on the issuance of a building permit.  See N.J.S.A. 40:55D-18.  In no event, however, does the record support the ultimate conclusion that the applicant failed to establish the positive or negative criteria for a (c)(1) or (c)(2) variance.

## VII.

Finally, we address whether dismissal of the complaint in lieu of prerogative writs should have been without prejudice. After finding that the applicant established the positive criteria for the variance, the trial court concluded that the applicant did not satisfy the negative criteria, primarily citing the inadequacy of the evidence adduced by the applicant concerning drainage on the property.  The trial court, however, affirmed that denial without prejudice, thereby permitting the applicant to return to the Board with the same application on the same or additional evidence.  We discern from the record that the trial judge regretted the terms of the original remand order that restricted all parties from supplementing the record before the new vote and preventing all parties from addressing the issue of drainage in greater detail.  In doing so, however, the trial judge side-stepped the salutary rule that bars resubmission of the same proposal following a dispositive ruling by the Board.

The principle of res judicata has evolved principally in the judicial system to prevent the same claims involving the same parties from being filed and brought before a court repeatedly. Velasquez v. Franz, 123 N.J. 498, 505 (1991). It is a salutary rule that respects the finality of the initial decision, limits the burden of litigation on adverse parties, and removes unnecessary litigation from the courts. City of Hackensack v. Winner, 82 N.J. 1, 32 (1980). "[A]n adjudicative decision of an administrative agency 'should be accorded the same finality.'" Bressman v. Gash, 131 N.J. 517, 526 (1993) (quoting Restatement (Second) of Judgments § 83 cmt. b (1982)); see also Russell v. Bd. of Adjustment of Tenafly, 31 N.J. 58, 65 (1959).

If an applicant files an application similar or substantially similar to a prior application, the application involves the same parties or parties in privity with them, there are no substantial changes in the current application or conditions affecting the property from the prior application, there was a prior adjudication on the merits of the application, and both applications seek the same relief, the later application may be barred. It is for the Board to make that determination in the first instance. Bressman, supra, 131 N.J. at 527; Russell, supra, 31 N.J. at 67. By permitting the applicant to return to the Board with the same application, the

31

trial judge ignored the salutary purposes of the principle of res judicata, usurped the role of the Board to determine if it should hear the same application involving the same parties once again, and deprived all parties of the benefits of a final decision. In this case, it was incumbent on the judge to affirm, reverse, or modify the decision of the Board, not to prolong an already protracted proceeding.

## VIII.

The judgment of the Appellate Division is affirmed as modified.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, HOENS, and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-52                          SEPTEMBER TERM 2011

ON CERTIFICATION TO      Appellate Division, Superior Court


TEN STARY DOM PARTNERSHIP,

        Plaintiff-Appellant,

             v.

T. BRENT MAURO and
THE BOROUGH OF BAY HEAD
PLANNING BOARD,

        Defendants-Respondents.



DECIDED        August 5, 2013
                Chief Justice Rabner              PRESIDING
OPINION BY      Judge Cuff (temporarily assigned)
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY


| CHECKLIST | AFFIRMED AS MODIFIED | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE HOENS | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |