**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1169-17T2

JOHN and MARY
SCHEIBELHOFFER,

     Plaintiffs-Appellants,

v.

BRICK TOWNSHIP ZONING
BOARD OF ADJUSTMENT,

     Defendant-Respondent.

_____

         Argued December 17, 2018 – Decided March 8, 2019

         Before Judges Haas and Mitterhoff.

         On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0719-17.

         John J. Jackson, III argued the cause for appellants (King, Kitrick, Jackson & McWeeney, LLC, attorneys; John J. Jackson, III, on the briefs).

         Ronald D. Cucchiaro argued the cause for respondent (Weiner Law Group LLP, attorneys; Ronald D. Cucchiaro, of counsel and on the brief).

PER CURIAM

This is an appeal of the trial court's decision concerning an action in lieu of prerogative writs in which plaintiffs John and Mary Scheibelhoffer challenged the decision of the Brick Township Board of Adjustment's (the "Board") partial denial of their application for variance. For the reasons that follow, we conclude that once the trial court determined that the subject property's size and configuration gave rise to a hardship pursuant to N.J.S.A. 40:55D-70(c)(1) of the Municipal Land Use Law ("MLUL"), it was compelled to reverse and remand to the Board to weigh the positive criteria established by the hardship against the negative criteria. Therefore, we now reverse and remand the matter to the Board to conduct the appropriate (c)(1) weighing test.

Plaintiffs are the owners of a single family residence located in the Mantoloking Shores neighborhood of Brick, New Jersey (the "property"). The subject property is designated as Block 44.21, Lot 6 on the official map of the Township of Brick. The property contains 7,834 square feet and is an undersized corner lot which has 120.94 feet of frontage along the northerly side of Tide Pond Road and 80.90 feet of frontage along the easterly side of Wherry Lane. The property is bordered to the east by a lagoon. The property is situated in the R-7.5 (Single-Family Residential) Zone, as are adjacent residential properties to the north. The property is bordered to the east by a lagoon. It is essentially a

pie-shaped lot with two front yards, one located on Tide Pond Road and one located on Wherry Lane.

Plaintiffs' home was substantially damaged as a result of the impact of Hurricane Sandy in October 2012. In 2013, the home was elevated three feet and the rear deck adjacent to the lagoon was reconstructed and elevated by two feet. The contractor hired by plaintiffs represented that all work was done in compliance with the permits; however, plaintiffs later discovered that the contractor had not built the deck, hot tub and awning in compliance with the construction permit and approved plans. According to plaintiffs, they were unaware of the deviations because the contractor stated that everything was being built in accordance with what was permitted. The alterations ultimately forced plaintiffs to seek variance relief to legitimize the improvements so plaintiffs could obtain a certificate of occupancy.

On December 14, 2016, the Board held a hearing regarding plaintiffs' application for variance relief. At the hearing, plaintiffs relied on the expert testimony of an engineer and planner, Charles Lindstrom, P.E., P.P. Two objecting neighbors, Linda Sampson and Kathy Rosman, both of whom live on adjacent properties on Wherry Lane, were represented by attorney Adam Steurmann, Esq. The objectors urged the Board to deny plaintiff's application

3

because the improvements as constructed compromised their privacy and represented a "self-created" hardship. Mr. Lindstrom testified that

> there's certainly a hardship here with the size and shape of the lot. It is undersized. It's required to be 9,000 square feet. It's 7,854 square feet. It has a shape that narrows down to the rear. It had a house on it that was raised and the appurtenant structures had to be raised with it to accommodate the doorways and the access points.

Lindstrom testified that in connection with the improvements, plaintiffs relocated the hot tub to a grade-level platform paver pad that sits to the left of the raised deck in the side yard. Plaintiff testified that he had an electrical inspection done for the hot tub. Mr. Lindstrom testified that the hot tub is "fairly well screened by the vegetation around it. I don't think the hot tub has any negative impact on anything, because it's just down on the ground[.]" Mr. Lindstrom further testified that the hot tub is in an "appropriate location, even though it's in the front yard. It's away from any other neighbors." He testified that he did not believe there would be "any negative impact whatsoever [from approving the hot tub location and the awning] . . . because they do not affect any adjoining properties."

Ultimately, the Board approved the variances related to two pre-existing non-conforming sheds; lot coverage; the deck; the boundary line fence; and bulk

variance for the non-conforming lot dimensions. However, the Board denied the variances related to the location of the hot tub and the awning over the deck. In a February 1, 2017 Resolution, the Board concluded that plaintiffs were not entitled to consideration of a hardship variance, based on its agreement with the objectors that any hardship was self-created. Analyzing the application pursuant to N.J.S.A. 40:55D-70(c)(2), the Board found that plaintiffs failed to establish the positive criteria for a (c)(2), or "flexible c," variance, which allows for a variance

> where in an application or appeal relating to a specific piece of property the purposes of this act . . . , would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, grant a variance to allow departure from regulations pursuant to article 8 of this act; provided, however, that the fact that a proposed use is an inherently beneficial use shall not be dispositive of a decision on a variance under this subsection[.]

> [Ibid.]

Approval of a (c)(2) variance is based on the purposes of the zoning ordinance, not on the advancement of the goals of the property owner. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 30 (2013) (citing Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 562-63 (1988)). "Thus, the positive criteria include proof that the characteristics of the property present an opportunity to

put the property more in conformity with development plans and advance the purposes of zoning." Ibid. (citing Kaufmann, 110 N.J. at 563-64).

The Board's February 2017 Resolution found that plaintiffs failed to show that the relocated hot tub and awning met the positive criteria for a (c)(2) variance. The Board also concluded that plaintiffs failed to satisfy the negative criteria concerning the hot tub or the awning. The Board found that the awning "restricts sufficient air, light and open space on the property" because it "extends 14.8 feet from the easterly side of the home and is 22.3 feet wide." The Board also concluded that the hot tub "benefits only [plaintiffs] and not the public; does not create a more desirable visual environment and, therefore, does not advance the intent and purpose of the Municipal Land Use Law." The Board further concluded that "the encroachment of the front and side yard setbacks by the awning/canopy and hot tub will have a detrimental effect on neighboring properties." The Board further found that awnings and hot tubs are not commonly found in the neighborhood. As a result, the Board denied plaintiffs' variance applications for the hot tub and the awning.

Plaintiffs filed an action in lieu of prerogative writs to challenge the Board's denial of variance relief for the hot tub and the awning. An action in lieu of prerogative writs is "a comprehensive safeguard against official wrong,"

Mullen v. Ippolito Corp., 428 N.J. Super. 85, 102 (App. Div. 2012) (quoting Garrou v. Teaneck Tryon Co., 11 N.J. 294. 302 (1953)), that allows a citizen to challenge a municipality's action or inaction. On appeal, our standard of review is the same as that of the trial court that considered the municipal action. See Cohen v. Bd. of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 614-15 (App. Div. 2007). Municipal actions are upheld unless arbitrary, capricious or unreasonable. Berkeley Square Ass'n, Inc. v. Zoning Bd. of Adjustment of Trenton, 410 N.J. Super. 255, 263 (App. Div. 2009).

In their action before the trial court, appellants asserted that the Board erred in concluding that the hardship creating the need for a variance to permit the hot tub and awning was "self-created." The trial court agreed, concluding that appellants' irregular lot size and shape created a hardship as defined by N.J.S.A. 40:55D-70(c)(1) of the Municipal Land Use Law ("MLUL"). Specifically, the trial court found

> that the shape of this lot, to the extent that it is irregular and nonconforming in size as required by the zone, and the inability of the property owner to make the lot conforming in size as required by the zone, and the inability of the property owner to make the lot conforming, does create a "hardship" as specified by [the MLUL]. The shape of this lot, the location on the lagoon, and the dual front yard setbacks create unusual circumstances in which compliance with the normal

7

dictates of the zoning requirements would satisfy the "hardship requirement" for a c(1) variance.

The trial court also found that the Board erred in finding that the hardship was "self-created." Nonetheless, the trial court found that plaintiffs did not sustain their burden of proving the "negative criteria" for a variance. The trial court noted that "[t]he Board found that hot tubs and canopies of the proposed size were not commonly found in the neighborhood; that they detracted from the open space created by setbacks; and were detrimental to the purposes which the set-back regulations sought to promote." Thus, the trial court affirmed the Board's denial of plaintiffs' applications for variances for the hot tub and the awning.

On this appeal, plaintiffs allege that the trial court erred by, in essence, usurping the Board's function in its determination that the Board correctly found that plaintiffs' failure to establish the negative criteria was fatal to plaintiffs' application. In that regard, plaintiffs assert that once the court found that plaintiffs established a prima facie entitlement to a (c)(1) hardship that was not "self-created," the court was required to reverse and remand to allow the Board to conduct a proper weighing of the positive criteria, established by the (c)(1) hardship, against the negative criteria. Having reviewed the record and in light of the applicable law, we are constrained to agree.

The statutory authority for the "hardship variance" is found in N.J.S.A. 40:55D-70(c)(1), which states,

> Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act1 would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship.

The above hardship is known as the "positive criteria" required for a (c)(1) variance. See Jock v. Zoning Bd. of Adjustment of Twp. of Wall, 184 N.J. 562, 575 (2005); Nash v. Board of Adjustment of Morris Twp., 96 N.J. 97, 102 (1984). The applicant bears the burden of establishing that the particular conditions create a hardship. Ten Stary Dom Partnership v. Mauro, 216 N.J. 16, 29 (2013). Hardship, under (c)(1), "refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise." Jock, 184 N.J. at 590.

Applicants for a variance under (c)(1) must also satisfy the "negative criteria:"

> No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.

> [N.J.S.A. 40:55D-70(d). See also Nash, 96 N.J. at 102.]

A zoning board must balance these negative criteria against the positive criteria. See Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J. Super. 509, 519 (App. Div. 1963). In construing a previous zoning statute in Yahnel, we described the balancing of the positive and negative criteria:

> Obviously, any permission for a nonresidential use in a residential zone may have some tendency to impair residential character, utility or value. But the statutory rationale of the function of the board of adjustment is that its determinations that there are special reasons for a grant of variance and no substantial detriment to the public good or impairment of the zone plan, etc., in such grant represent a discretionary weighing function by the board wherein the zoning benefits from the variance are balanced against the zoning harms.

> [Ibid. (emphasis added).]

Similarly, in this case, the negative criteria required for a (c)(1) variance cannot be analyzed separate and apart from the positive criteria.

Guided by these principles, we conclude that the Board was unable to discharge its statutory duty to weigh the positive criteria established by the

10

hardship against the negative criteria, because it wrongly concluded that the hardship was self-created. Thus, the Board did not perform the balancing test required for a (c)(1) variance. The Board analyzed the positive and negative criteria only in the context of a (c)(2) variance. A (c)(2) variance merely required the Board to weigh the detriment to the public good against the extent to which plaintiffs' variance would further the purposes of the MLUL, and does not take into account any hardship posed by the property's configuration. See N.J.S.A. 40:55D-70(c)(2). For that reason, we reverse the trial court's order and remand the matter to the Board for further proceedings in accordance with this opinion.

To the extent any remaining arguments are not addressed in this opinion, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION