NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1474-15T4

CHESTNUT SQUARE APARTMENTS,
LLC, and DR. JAMIL AKHTAR,

 Plaintiffs-Appellants/
 Cross-Respondents,

v.

CITY OF VINELAND and CITY
OF VINELAND FIRE PREVENTION
BUREAU,

 Defendant-Respondent/
 Cross-Appellant,

and

CUMBERLAND COUNTY CONSTRUCTION
BOARD OF APPEALS,

 Defendant-Respondent.

_______________________________

 Submitted June 1, 2017 – Decided September 19, 2017

 Before Judges Carroll and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Cumberland County,
 Docket No. L-121-14.

 Stephen Altamuro, attorney for appellants
 Chestnut Square Apartments, LLC, and Dr. Jamil
 Akhtar.
 Buonadonna & Benson, PC, attorneys for
 respondents/cross appellants City of Vineland
 and City of Vineland Fire Prevention Bureau
 (Michael E. Benson and Alan G. Giebner, on the
 brief).

 Edward F. Duffy, attorney for respondent
 Cumberland County Construction Board of
 Appeals.

PER CURIAM

 Chestnut Square Apartments, LLC (Chestnut Square), and Dr.

Jamil Akhtar (collectively plaintiffs) appeal from the July 10,

2015 order of the Law Division affirming in part the decision of

the Cumberland County Construction Board of Appeals (Board). The

Board determined that Chestnut Square and Dr. Akhtar violated

Ordinance No. 2003-70 and Uniform Fire Code Section 503 by removing

the fire lane signage, and imposed a $5000 fine on each of them.

The trial court upheld the violation against Chestnut Square but

reduced the fine to $2500. As to Dr. Akhtar, the court vacated

and dismissed the violation and the fine. The Board also

determined that Chestnut Square and Dr. Akhtar violated N.J.S.A.

52:27D-210 by interfering with the duties of the Fire Bureau, and

imposed a $2500 fine on each of them. The court affirmed the

violation and the fine against Chestnut Square but vacated and

dismissed both as to Dr. Akhtar. The City of Vineland cross-

appeals the provisions of the July 10, 2015 order that relieved

Dr. Akhtar of all personal liability and reduced the fine imposed

 2 A-1474-15T4
on Chestnut Square. We conclude that the arguments raised in both

the appeal and cross-appeal are without merit and, accordingly,

we affirm.

 The express purpose of the Uniform Fire Safety Act (UFSA),

N.J.S.A. 52:27D-192 to -213, enacted in 1983, is to create a

"uniform, minimum, fire safety code" to "protect the lives and

property of the State's citizens[,]" ensure "uniform" and

"thorough . . . fire safety inspections[,]" and provide "swift and

commensurate" penalties for violations. N.J.S.A. 52:27D-195.

UFSA "is remedial legislation . . . and shall be liberally

construed to effectuate these purposes." N.J.S.A. 52:27D-193.

Pursuant to N.J.S.A. 52:27D-210a(1), "[n]o person shall . . .

[o]bstruct, hinder, delay or interfere by force or otherwise with

the . . . local enforcing agency in the exercise of any power or

the discharge of any function or duty under the provisions of

[UFSA.]" Under N.J.S.A. 52:27D-210b(1), "[a] person who violates

or causes to be violated a provision of [N.J.S.A. 52:27D-210a]

shall be liable to a penalty of not more than $5,000 for each

violation."

 To implement UFSA, the Legislature specifically instructed

the Department of Community Affairs (DCA) to "promulgate . . .

regulations to [e]nsure the maintenance and operation of buildings

and equipment in such a manner as will provide a reasonable degree

 3 A-1474-15T4
of safety from fire and explosion." N.J.S.A. 52:27D-198(a).

Pursuant to those legislative instructions, the DCA adopted the

model code of the International Code Council as the State Fire

Prevention Code for New Jersey (Uniform Fire Code), subject to the

modifications set forth in N.J.A.C. 5:70-3.2. See N.J.A.C. 5:70-

1.1 to -4.20. N.J.A.C. 5:70-1.3(a) provides that the Uniform Fire

Code is designed "for the safeguarding to a reasonable degree of

life and property from . . . conditions hazardous to life or

property in the use or occupancy of buildings or premises."

 Section 503 of the Uniform Fire Code, governing fire apparatus

access roads, provides:

 503.1. Where required. Fire apparatus access
 roads shall be provided and maintained in
 accordance with Section 503.1.1.

 503.1.1. The fire official may require and
 designate public or private fire lanes as
 deemed necessary for the efficient and
 effective operation of fire apparatus, access
 to building openings by fire fighters or
 egress of occupants.

 503.1.1.1. Proposed fire lanes shall not
 conflict with prior approvals issued by the
 planning and/or zoning boards unless the
 administrative authority for the planning
 and/or zoning board grants approval of the
 creation of the fire lane in writing.

 503.2. Specifications. Fire apparatus access
 roads shall be installed and arranged in
 accordance with Section 503.2.1 through
 503.2.7.

 4 A-1474-15T4
 503.2.2. Authority. The fire code official
 shall have the authority to require an
 increase in the minimum access widths where
 they are inadequate for fire or rescue
 operations.

 503.3. Marking. Where required by the fire
 code official, approved signs or other
 approved notices shall be provided for the
 fire apparatus access roads to identify such
 roads or prohibit the obstruction thereof.
 Signs or notices shall be maintained in a
 clean and legible condition at all times and
 be replaced or repaired when necessary to
 provide adequate visibility.

 503.4. Obstruction of fire apparatus access
 roads. Fire apparatus access roads shall not
 be obstructed in any manner, including the
 parking of vehicles. The minimum widths and
 clearances established in Section 503.2.1
 shall be maintained at all times.

Similarly, N.J.S.A. 40A:14-53 provides that a "municipality, by

ordinance, may authorize the officials in charge of the paid or

part-paid fire department and force to establish fire areas to

regulate traffic and parking therein and provide penalties for

violations."

 Pursuant to UFSA, Vineland Ordinance No. 2003-70 was adopted

on December 24, 2003, to update all existing fire lanes and ensure

compliance with the Uniform Fire Code. The ordinance amended

prior Ordinance No. 973, and includes comprehensive requirements

concerning fire lanes, such as curb markings and signage. The

Ordinance further delineates various locations in the City of

 5 A-1474-15T4
Vineland where fire lanes were to be established or maintained as

follows:

 §253-1. Prohibited parking.
 No person shall park or stop a motor vehicle
 in or in any other manner obstruct a properly
 designated fire lane, fire hydrant or fire
 department connection. This shall apply to
 any public street, private street or access
 lane.

 §253-2. Enforcement.
 Violations of this chapter or any provision
 of the Uniform Fire Safety Act . . . or the
 New Jersey Uniform Fire Code . . . which
 pertains to this chapter shall be enforced by
 the Fire Prevention Bureau.

 . . . .

 §253-3. Fire lane locations.
 All fire lane locations shall be recorded in
 a file maintained by the Fire Prevention
 Bureau and shall be made available for public
 inspection. Copies of said file shall also
 be located in the City Clerk's Office, the
 Police Department, and the Fire Department.

 §253-4. Curb markings.
 All curbs in a fire lane shall be painted
 exclusively with yellow traffic paint that
 meets the specifications for Type 1 Pure
 Drying Yellow Traffic Paint for road and
 bridge construction of the New Jersey
 Department of Transportation. . . .

 §253-5. Posting and signs.
 Whenever a fire lane is established on any
 property, the property owner shall erect,
 replace, repair and maintain all fire lane
 signs and markings on said property as
 specified in this section and by the Fire
 Prevention Bureau. The property owner shall
 have fifteen (15) days to comply with this

 6 A-1474-15T4
 section upon proper notice by the Fire
 Prevention Bureau. . . .

 . . . .

 §253-6. Violations and penalties.
 The Fire Prevention Bureau shall have the
 authority to issue any fine, penalty or
 enforcement action as provided for in the
 Uniform Fire Safety Act or the New Jersey
 Uniform Fire Code.

 . . . .

 §253.7. Appeals.
 Any person may appeal a fine, penalty or
 enforcement action issued under this chapter
 by submitting a written hearing request to the
 City of Vineland Construction Board of
 Appeals. . . .

 [Vineland, N.J., Ordinance No. 2003-70
 (2003).]

 Chestnut Square is a large apartment complex in the City of

Vineland constructed in 1968. It consists of 232 units

encompassing thirteen different buildings with wood-frame

construction and a common attic space across the top of each

building. Chestnut Square is one of the designated locations in

Vineland where fire lanes were to be established and maintained

under Ordinance No. 2003-70. In 2005, Chestnut Square and Dr.

Akhtar, the managing member of the LLC, were cited for violations

relating to the curbing and signage of its fire lanes. Among

other things, they were ordered to repaint the "[e]xisting [y]ellow

[c]urbing" and repaint the "No Parking Fire Lane" sign. The

 7 A-1474-15T4
violations were abated and a certificate of compliance was issued

in 2006. In 2012, Chestnut Square and Dr. Akhtar were again cited

for violations relating to the color of the curbing of its fire

lanes. The violations were abated with the proper colored curbs

and certificates of compliance were issued in September 2013.

 Subsequently, an inspection revealed that the "Fire Lane-No

Parking" signs had been removed and replaced with "No Parking-Tow

Away Zone" signs. As a result, Chestnut Square and Dr. Akhtar

were cited by the Fire Marshal and issued two violations, resulting

in the issuance of a September 25, 2013 Order to Pay Penalty and

Abate Violations as follows:

 #1. Entire Complex: Fire lanes shall be
 installed in accordance with Vineland City
 Ordinance #2003-70, Uniform Fire Code, Section
 503, Fire Apparatus Access Roads. Fine
 imposed: $5,000.00.

 # 2. Removal of Fire Lanes Post Inspection:
 No person shall hinder or interfere with the
 duties of the local enforcement agency,
 N.J.S.A. 52:27d-210. Fine imposed: $5,000.00.

 Plaintiffs appealed the issuance of the violations to the

Board. A testimonial hearing was conducted on January 7, 2014,

during which Dr. Akhtar and Fire Marshal, Michael Cifaloglio,

testified. Cifaloglio testified that after the 2012 violations

were abated, his officers began enforcing the parking

restrictions. However, Chestnut Square residents informed his

 8 A-1474-15T4
office that Chestnut Square's head of maintenance, Cafael Torres,

had instructed them that "they did not have to pay their tickets

because it was not a fire lane, it was a tow away zone and the

signs say tow away zone." When Cifaloglio investigated on

September 25, 2013, he discovered "that the signs had, in fact,

been changed." Cifaloglio confronted Torres who informed him that

Dr. Akhtar had told him "they're not fire lanes. They're tow away

zones." Cifaloglio acknowledged that "[t]hings got a little

heated" until Dr. Akhtar intervened. However, Cifaloglio admitted

that he never heard Dr. Akhtar tell anyone not to pay their ticket.

 Dr. Akhtar testified that he directed staff to replace the

fire lane signs with the tow-away zone signs, explaining that

"it's . . . absolutely counterproductive to make that a fire lane"

because it was "not a through lane." However, according to Dr.

Akhtar, he did not instruct staff to tell residents they did not

have to pay the tickets, and he denied being aware of the 2005 or

2012 violations and resulting abatements.

 Regarding Ordinance No. 2003-70, Cifaloglio testified that

the ordinance was purposely vague to give him enforcement

flexibility and to avoid having to amend the ordinance every time

the Uniform Fire Code was revised. According to Cifaloglio, the

ordinance "doesn't need to be specific because Section 503 of the

Uniform Fire Code is quite specific."

 9 A-1474-15T4
 The Board sustained the violations but reduced the fine on

the hindering violation from $5000 to $2500. In rejecting

plaintiffs' challenges to the violations, the Board determined

that

 (1) the language of the Uniform Fire Code,
 Section 503 is clear and unambiguous; (2) fire
 lanes were previously established at the
 subject apartment complex prior to November
 11, 2005 and the owner, in fact, abated
 violations regarding same at said time[;] (3)
 the owner subsequently abated violations
 regarding the fire lanes in or about July
 2013; (4) [t]he owner thereafter unilaterally
 modified the signage to "Tow Away" Zone; (6)
 the owner LLC, by and through its building
 manager, instructed tenants that the areas
 were not fire lanes but were "tow away" zones
 and they did not have to pay any violations.

 To challenge the Board's decision, plaintiffs filed a

complaint in lieu of prerogative writs seeking to overturn the

violations and fines, alleging that the Board and the Fire Bureau's

actions were "arbitrary, capricious and unreasonable and in

violation of State and Federal Law." Specifically, plaintiffs

alleged that Ordinance No. 2003-70 was "vague and overbroad and

therefore unenforceable against [p]laintiffs[.]" Plaintiffs

alleged the Board sustained the violations without any "valid

proof" establishing "either violation[.]" Plaintiffs also alleged

that their "property, improvements, and building predate any

ordinance regarding fire lanes and therefore they are not subject

 10 A-1474-15T4
to same." Further, plaintiffs contend that because "[n]o specific

proof was provided" indicating that "he individually hindered or

obstructed the Fire Marshal[][,]" Dr. Akhtar was "not individually

responsible for decisions made by the entity."1

 In a July 10, 2015 written decision, Judge Richard J. Geiger

upheld the violations against Chestnut Square, determining the

Board's findings and conclusions were supported by "substantial

credible evidence in the record[,]" and were neither arbitrary,

capricious, nor unreasonable. However, the judge vacated and

dismissed the violations against Dr. Akhtar, finding insufficient

evidence of personal involvement or any wrongdoing on his part.

Further, Judge Geiger determined that as a member, rather than an

owner of the LLC, Dr. Akhtar was "not liable for the acts of the

LLC or its employees that he did not personally undertake or

direct."

 Judge Geiger also reduced the fine against Chestnut Square

imposed for the ordinance violation to $2500. The judge found the

$5000 fine "to be unreasonable and excessive under the

circumstances[,]" given the fact that "plaintiffs did not remove

the fire lane signs for purposes of creating additional illegal

1
 Plaintiffs' complaint consisted of three counts. However, with
the agreement of the parties, counts two and three were
subsequently dismissed.

 11 A-1474-15T4
parking[,]" and "removing the fire lane signs did not result in

any actual harm." The judge acknowledged, however, that "this was

not the first time that Chestnut Square had been cited for fire

lane violations and that this was an intentional violation, not a

careless mistake." Nonetheless, Judge Geiger noted that the $5000

fine "was the maximum allowable under the law" and "five times

higher than the fine permitted for committing a disorderly persons

offense."

 In rendering his decision, Judge Geiger rejected plaintiffs'

arguments after thoroughly canvassing the record, giving due

deference to the Board's credibility findings, and accurately

applying the legal principles governing the action in lieu of

prerogative writs. In analyzing plaintiffs' contention that

Ordinance No. 2003-70 was "void for vagueness" and failed "to put

property owners on notice of its requirements[,]" Judge Geiger

acknowledged that the prior ordinances included a schedule or

listing of the specific location and dimensions of the fire lanes

at each affected commercial property, while Ordinance No. 2003-70

does not. "Instead, it merely lists the mailing addresses of the

affected properties and provides: 'All fire lane locations shall

be recorded in the file maintained by the Fire Prevention

Bureau[.]'" Judge Geiger further noted that the ordinance, "does

not contain any specific reference to Section 503" of the Uniform

 12 A-1474-15T4
Fire Code, nor "any details with regard to the width, length or

location of the fire lanes."

 Nonetheless, Judge Geiger found that:

 The record in this matter clearly
 demonstrates that since at least 2005,
 Chestnut Square and Dr. Akhtar had actual
 notice of the location, length and width of
 the fire lanes required at Chestnut Square.
 Indeed the curbs for the fire lanes were
 painted and signs posted at each required fire
 lane. Enforcement action occurred when the
 color of the curbs was changed by Chestnut
 Square from yellow to red. After being cited,
 Chestnut Square changed the color back to
 yellow. In addition, the fire lanes were at
 one point properly posted with Fire Lane-No
 Parking signs, which were subsequently changed
 by Chestnut Square to No Parking-Tow [Away]
 Zone signs, and have now been changed back.
 It is thus clear that both Chestnut Square and
 Dr. Akhtar have known the precise location and
 dimensions of the fire lanes since 2005.
 Accordingly,[] [t]hey had actual knowledge of
 the requirements. This is not a case in which
 they have been penalized for not complying
 with fire lane requirements that they did not
 know about. Nor is this a case in which the
 reasonableness of the size and dimensions of
 the fire lanes is under any legitimate
 substantive attack.

 In rejecting plaintiffs' contention that the City Council

"impermissibly gave unbridled, complete and unlimited power to the

Fire Marshal[] to decide where and what fire lanes would be

established[,]" Judge Geiger explained:

 While the City delegated the authority
 to determine and enforce the location and
 dimensions of the fire lanes at the designated

 13 A-1474-15T4
 commercial locations to the Fire Marshal[],
 the list of locations would naturally change
 over time as new commercial entities were
 created. More importantly, Section 503.1.1
 of the Uniform Fire Code expressly authorizes
 fire officials to require and designate public
 or private fire lanes as deemed necessary for
 the efficient and effective operation of fire
 apparatus, access to building openings by fire
 fighters or egress of occupants. Determining
 the location and dimensions of fire lanes is
 a function that requires the particularized
 knowledge and expertise of fire officials, who
 have necessary ability to determine the
 specific areas that fire apparatus need
 unfettered access to for ingress, egress and
 positioning fire engines and ladder trucks
 during fires. This includes the size of the
 trucks and outriggers, locations of fire
 hydrants, building size and configuration in
 relation to curb lines and other pertinent
 information within their knowledge base.

 In rejecting plaintiffs' contention that Chestnut Square was

not subject to the Uniform Fire Code because it was built before

the Uniform Fire Code was adopted, Judge Geiger considered

plaintiffs' reliance on "Bulletin 2010-4 issued by the Department

of Community Affairs," reiterating the language of N.J.A.C. 5:70-

3.1(d), which states:

 This subchapter establishes fire prevention
 requirements governing the safe maintenance of
 all buildings and premises subject to the
 code. It is not the intent of the new Uniform
 Fire Code Subchapter 3 to require the
 installation or upgrading of any system,
 equipment or building component not already
 required by [N.J.A.C.] 5:70–4 or by the
 Uniform Construction Code in effect at the
 time of construction of the building or at the

 14 A-1474-15T4
 time of installation of any existing system,
 equipment or building components. This
 subchapter shall not be cited as the basis for
 any retrofit requirement.

Judge Geiger found plaintiffs' reliance on the Bulletin misplaced

because "imposing fire lanes does not involve 'the installation

or upgrading of any system, equipment or building component.' It

only involves creating, demarcating and signing no parking zones."

 Likewise, Judge Geiger rejected plaintiffs' contention that

Chestnut Square "should be grandfathered in as to the later adopted

Uniform Fire Code requirements" because of its compliance with

"all applicable Uniform Construction Code [N.J.S.A. 52:27D-119 to

-141] and Planning Board requirements when it was built[.]" The

judge explained that "the Uniform Construction Code does not

regulate exterior fire lanes. In addition, the Uniform

Construction Code did not become effective in New Jersey until

1976, some eight years after Chestnut Square was constructed."

Similarly, Judge Geiger rejected plaintiffs' contention "that the

creation of the fire lanes is in conflict with the Site Plan

approved by the Planning Board." The judge noted:

 There is no evidence in the record that the
 fire lanes eliminate any designated parking
 spaces approved or required by the Site Plan.
 The fire lanes did not change any curb lines,
 the width of any driveways, or location of any
 entrance or exit within the apartment complex.
 Therefore, imposing the fire lanes did not
 violate Section 503.1.1.1 of the Uniform Fire

 15 A-1474-15T4
 Code by conflicting with prior approvals
 issued by the planning or zoning boards.

 This appeal and cross-appeal followed. On appeal, Chestnut

Square renews the arguments that were rejected by Judge Geiger.

The City of Vineland cross-appeals the reduction of the fine

imposed on Chestnut Square and the judge's finding that Dr. Akhtar

was not personally liable. We affirm substantially for the reasons

stated by Judge Geiger in his comprehensive and well-reasoned

written decision. We add only the following brief comments.

 We review the Board's action using the same standard of review

as the trial court. Fallone Props., L.L.C. v. Bethlehem Twp.

Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). We must

determine whether the "board'[s] decision 'is supported by the

record and is not so arbitrary, capricious, or unreasonable as to

amount to an abuse of discretion.'" New Brunswick Cellular Tel.

Co. v. S. Plainfield Bd. of Adjustment, 160 N.J. 1, 14 (1999)

(quoting Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment,

152 N.J. 309, 327 (1998)). The Board's decision must be supported

by substantial evidence in the record, Ten Stary Dom P'ship v.

Mauro, 216 N.J. 16, 33 (2013), not by unsupported allegations or

conjecture, Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of

W. Windsor Twp., 172 N.J. 75, 88 (2002). Having reviewed the

record and the parties' arguments in light of the controlling

 16 A-1474-15T4
legal principles, we find no basis to disturb Jude Geiger's

insightful analysis of the issues presented. R. 2:11-3(e)(1)(A).

 Affirmed.

 17 A-1474-15T4