**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0037-17T3

H. CHRISTINA CHEN-OSTER
and MICHAEL OSTER,

      Plaintiffs-Appellants,

v.

THE ZONING BOARD OF
ADJUSTMENT OF THE
TOWNSHIP OF MIDDLETOWN,

      Defendant-Respondent.

_____

Argued October 29, 2018 – Decided January 11, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0003-17.

Lawrence H. Shapiro argued the cause for appellants (Ansell Grimm & Aaron, PC, attorneys; Lawrence H. Shapiro and Andreas D. Milliaressis, on the briefs).

Gregory W. Vella argued the cause for respondent (Collins, Vella & Casello, LLC, attorneys; Gregory W. Vella, of counsel; Devon M. McKee, on the brief).

PER CURIAM

The Municipal Land Use Law (MLUL) "permits a variance from a bulk or dimensional provision of a zoning ordinance . . . when, by reason of exceptional conditions of the property, strict application of a . . . provision would present peculiar and exceptional practical difficulties or exceptional hardship to the applicant." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 29 (2013) (citing N.J.S.A. 40:55D-70(c)(1)) (emphasis added). "Such exceptional conditions may include the dimensions of the property, topographic conditions, or some other extraordinary or exceptional feature unique to the property." Ibid. (citing N.J.S.A. 40:55D-70(c)(1)).

"In addition, an applicant for a (c)(1) variance must satisfy the negative criteria." Id. at 30 (citing Nash v. Bd. of Adjustment of Morris Twp., 96 N.J. 97, 102 (1984)). "The negative criteria require proof that the variance will not result in substantial detriment to the public good or substantially impair the purpose of the zoning plan." Ibid. (citing Nash, 96 N.J. at 102).

In 2009, defendant Zoning Board of Adjustment of the Township of Middletown (the Board) approved plaintiffs' development application, including their request for variances from height and side yard setback restrictions. When plaintiffs abandoned the plan and instead built an alternate structure, the Board

A-0037-17T3

exercised its jurisdiction and required plaintiffs to re-apply for a side yard variance. This time, the Board denied plaintiffs' application.

Plaintiffs filed a complaint in lieu of prerogative writs. The Law Division judge concluded the Board's denial was not arbitrary, capricious or unreasonable, and dismissed plaintiffs' complaint. This appeal followed.

I.

We provide some background. Plaintiffs' residence is located in the rear of a 6.24-acre irregularly-shaped parcel, bordered on the east by dedicated open space. Approximately five acres of vineyards and fruit trees are located in the front of the parcel. The property is steeply sloped from back to front.

In 2009, plaintiffs submitted a development application to construct a detached conservatory atop a flat-roofed storage area used for farm equipment and growing materials. If viewed from the rear of the property, the storage area would be below grade. Plaintiffs planned to have two staircases built to access the conservatory on top of the roof of the storage area, which would be covered with grass and bordered on one side with plantings. Plaintiffs also planned an addition to their residence, with a connecting covered walkway, neither of which needed Board approval.

A-0037-17T3

The zoning officer concluded no variance was required for the storage area because it was "subterranean." However, plaintiffs needed: 1) a height variance, because the conservatory would be eighteen-feet high, as opposed to sixteen feet permitted by the zoning regulations; and 2) a side yard variance, because the conservatory would be thirty-eight feet from the eastern property line, as opposed to seventy-five feet as required by regulations.

The Board granted the application. In its memorializing resolution, regarding the side yard variance, the Board stated that the front of the property contained "a substantial amount of vegetation and a vineyard[,]" and locating the conservatory in the rear was

> appropriate considering <u>the unique shape of the property and vineyard</u>. The applicant is able to place the conservatory more towards the front of the property and eliminate the side yard setback variance, however that would be a determinate [sic] to the adjoining property owners, as well as create a negative impact on the vineyard. The proposed location of the conservatory has no detrimental affect [sic] on the adjoining properties and can be granted without a substantial determinate [sic] to the Master Plan or Zoning Ordinances.
>
> [(Emphasis added).]

In considering the height variance, the Board noted the deviation was "minimal" and given the "substantial vegetation" and "unique location of the conservatory

A-0037-17T3

(to the rear of the . . . property)," the variance could "be grated [sic] without substantial detriment to the adjoining property owners or the Master Plan and Zoning Ordinances."

The Board concluded the development application "w[ould] have no substantial negative impact on the adjoining property owners or on the prevailing character of the neighborhood." The Board granted the variances "because of the uniqueness of the property," and because the "requested variance[s could] be granted without substantial detriment to the public good and [would] not impair the intended purpose of the Zoning Ordinance."

Because of cost constraints, plaintiffs abandoned the plan, and did not construct the conservatory. Instead, on dates undisclosed by the record, they constructed the proposed subterranean storage area and added a peaked roof to make the structure architecturally consistent with their home. As built, the garage/barn structure was now partially above grade but approximately the same size as the previously proposed subterranean storage area; the easterly wall was, as always, approximately twenty feet from the property line.[1]

---

[1] Plaintiffs attached a closed-in garbage area that encroached approximately another five feet into the setback. The setback variance request in 2009 measured the distance from the conservatory to the property line, not from the below-grade storage area to the property line.

After the garage/barn was fully constructed and inspected, the municipality issued plaintiffs a certificate of occupancy. The Board, however, decided to exercise jurisdiction, reasoning the structure was no longer subterranean. The Board required plaintiffs to re-apply solely for a variance from the side yard restrictions.

Plaintiff Michael Oster testified, as did a professional architect who designed the 2009 plan and was familiar with the garage/barn as constructed. It was undisputed that the garage/barn was not visible from the road, was not visible from the residence of the property owner to the west, and was only somewhat visible from the neighboring dedicated open-space parcel. Oster never testified that the family parked its vehicles inside the structure, but rather that it was used to park a tractor during growing season and to store other supplies for farming, canning, and bottling grapes and fruit. By a unanimous vote, the Board denied the application.

In its 2016 memorializing resolution, the Board noted it had not approved an "underground garage" nor did the Board "make ay [sic] findings regarding the underground garage" in 2009, because the zoning officer had already approved that part of the application. The Board found that plaintiffs' decision to place the structure near the back of the property, closer to the residence, was

6

more consistent with "a garage then [sic] a barn used for farming."  According to the resolution, the Board concluded that given the size of the lot, "if the garage/barn is used for farming purposes, [it] can be placed anywhere in the farming area, which would be consistent with a farm use. . . .  [Plaintiffs had] ample space to build the proposed barn somewhere that does not violate the side yard setback requirement."

The Board specifically did not agree with plaintiffs' position that because "the property is irregular [sic] shaped . . . placing the garage/barn in the rear is a better location . . . ."  The Board found plaintiffs sited the structure "for their own convenience and to use same as a residential garage, not as a barn."  The Board concluded plaintiffs "failed to satisfy the positive criteria[,]" because "there [was] nothing unique about this property that would cause the applicant an undue hardship for the construction of a barn that does not violate the side yard setback."

The Board also considered the "negative criteria," and found the side yard encroachment "provide[d] no benefit to the public good and the adjoining property owner [would] be substantially impaired by having such a large structure so close to their [sic] property line."  The Board rejected plaintiffs' contention that the reduction in side yard setback posed no detriment because

7

the neighboring property was dedicated open space. The Board found the garage/barn structure "is not only substantially encroaching into the side yard setback but in essence is violating the essence of the open space lot." The reduction in setback was "solely for the convenience of the applicant."[2]

Before the Law Division judge, plaintiffs argued that the Board's denial of the application "eviscerate[d] everything [it] found in the first [application]." Although not alleged in their complaint, plaintiffs also argued that the issuance of building permits and a certificate of occupancy by the municipality equitably

---

[2] The Board's resolution also addressed and rejected plaintiffs' request for relief pursuant to N.J.S.A. 40:55D-70(c)(2). That section of the MLUL

> permits a variance for a specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment. The applicant bears the burden of proving both the positive and negative criteria.
>
> [Ten Stary Dom, 216 N.J. at 30 (citing Nash, 96 N.J. at 106).]

The Law Division judge affirmed the Board's reasoning and denial of a (c)(2) variance.

Before us, plaintiffs again assert they are entitled to variance relief under section (c)(2). The argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). There is no evidence that the purposes of the zoning plan would be advanced by the garage/barn as constructed.

A-0037-17T3

estopped the Board from denying the application, and the memorializing resolution was legally inadequate.

In a comprehensive oral opinion, the judge cited appropriate case law and concluded res judicata did not bar the Board's bar consideration of the merits of the later application, which "contain[ed] several material differences." She noted a change in use between the conservatory, which was linked to the residence, and the garage/barn, which primarily served farm uses on the property. The judge affirmed the Board's reasoning that plaintiffs failed to satisfy the positive and negative criteria for a variance and rejected plaintiffs' assertion of estoppel, concluding there was no evidence regarding plaintiffs' interactions with the municipality. Lastly, the judge rejected plaintiffs' contention that the Board's resolution was legally deficient. She entered an order dismissing plaintiffs' complaint.

II.

On appeal, plaintiffs contend that some of the Board's findings in 2016 were contrary to specific findings it made in 2009. They argue "res judicata" applies to the Board's earlier findings thereby rendering the 2016 decision a "nullity." Plaintiffs contend they were entitled to variance relief, and the Board's denial was arbitrary, capricious and unreasonable. Additionally, plaintiffs argue

9

the Board should be equitably estopped from requiring them to secure a variance and, lastly, that the Board's resolution was "statutorily deficient."

Having considered these arguments in light of the record and applicable legal standards, we reverse and remand to the Board for further proceedings consistent with this opinion.

We apply "[t]he same standard of review" to the Board's decision as does the trial court. N.Y. SMSA, LP v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J. Super. 319, 331 (App. Div. 2004). A reviewing court can "set aside" a municipal board's decision "when it is 'arbitrary, capricious or unreasonable.'" Cell S. of N.J. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)). "[Z]oning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)). A zoning board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. (citing Cell S. of N.J., 172 N.J. at 81). While we accord substantial deference to the factual

findings of the Board, its conclusions of law are subject to de novo review. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993).

Initially, we agree with the Law Division judge that res judicata did not bar the Board's consideration of the application on its merits. As the Court recently explained, res judicata may bar consideration of a later application that is

> similar or substantially similar to a prior application, the application involves the same parties or parties in privity with them, there are no substantial changes in the current application or conditions affecting the property from the prior application, there was a prior adjudication on the merits of the application, and both applications seek the same relief . . . .
>
> [Ten Stary Dom, 216 N.J. at 39 (citing Bressman v. Gash, 131 N.J. 517, 527 (1993)).]

Of course here, plaintiffs invoke the doctrine affirmatively, i.e., they seek to give preclusive effect to the 2009 resolution.

"The question for the municipal agency on a second application . . . centers about 'whether there has occurred a sufficient change in the application itself or in the conditions surrounding the property to warrant entertainment' of the matter again." Allied Realty v. Upper Saddle River, 221 N.J. Super. 407, 414 (App. Div. 1987) (citing Russell v. Tenafly Bd. of Adjustment, 31 N.J. 58, 66 (1959)). The Board's decision in this regard "should 'be overturned on review

11

only if it is shown to be unreasonable, arbitrary or capricious.'" Bressman, 131 N.J. at 527 (quoting Russell, 31 N.J. at 67). We conclude, as did the trial judge, that the 2016 application was not substantially similar to the 2009 application so as to bar the Board's consideration of its merits.

We discern plaintiffs' argument more accurately to be whether the Board was required to give preclusive effect to its prior factual findings about the uniqueness of the property itself, and the beneficial placement of the structures — at that time, the conservatory atop the subterranean storage area — at the rear of the property and essentially out of view. In other words, should the Board have been collaterally estopped from finding, as it did in the second resolution, that the property was not "unique," and that the garage/barn could have been placed in the front of the property, closer to the farm portion that it serviced, despite being clearly visible from the road?

"Collateral estoppel . . . represents the 'branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007) (quoting Sacharow v. Sacharow, 177 N.J. 62, 76 (2003)) (emphasis added).

> For the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting

the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)) (citations and parentheticals omitted).]

We have applied the doctrine to decisions made by zoning boards of adjustment. See, e.g., Charlie Brown of Chatham, Inc. v. Bd. of Adjustment for Chatham Twp., 202 N.J. Super. 312, 327 (App. Div. 1985).

In Stop & Shop Supermarket Company v. Board of Adjustment of Springfield, the board made specific findings in considering a prior application for a use variance made by the applicant's predecessor in title. 162 N.J. 418, 436 (2000). Although couching its decision in terms of res judicata, the Court recognized that in the absence of any changed circumstances, the board "could not reasonably be permitted to contradict its earlier findings that residential development [in a] residentially-zoned portion of the property was inappropriate . . . ." Ibid.

A-0037-17T3

Here, it is undisputed that the particular features of plaintiffs' property, its "shape," "topographic conditions" and "physical features," N.J.S.A. 40:55D-70(c)(1), remained unchanged from 2009 when the Board specifically found the "unique shape" of the parcel and the location of the vineyard area at its front justified relief. Nevertheless, the Board found in 2016 that there was "nothing unique about th[e] property."

On the record before us, however, we cannot agree with plaintiffs that the Board's 2009 approval precluded consideration of the location of the garage/barn on the parcel, and that the earlier resolution is entitled to preclusive effect on that issue. We agree with the judge that the principle structure for consideration by the Board in 2009 was the conservatory; the subterranean storage area was outside the Board's purview. As constructed, the garage/barn undisputedly had a different use than the conservatory, but it had the same or similar use as the originally conceptualized subterranean storage area.

The Board, however, made conflicting findings about the garage/barn. On the one hand, the Board concluded there was no special justification for building the garage/barn near the residence, and plaintiffs could just have well located it in the front of the parcel without the need for a side yard variance. The judge subscribed to this view. Yet, the Board's resolution also found that the

14

placement of structure near the house was more consistent with "a garage then [sic] a barn used for farming."  Based upon our review of the record, there is no support whatsoever for this conclusion in the testimony.

In short, the Board's consideration of the 2016 variance application required, in the first instance, acceptance of its 2009 conclusion regarding "the particular condition of the property," which remained unchanged.  Whether the unique properties of the parcel "result[ed] in peculiar and exceptional practical difficulties to" plaintiffs' placement of the barn/garage was the critical issue. N.J.S.A. 40:55D-70(c)(1).

In this regard, we add that in Hawrylo v. Board of Adjustment, Harding Township, the trial court affirmed the zoning board's grant of a side yard variance to an applicant who intended to construct a barn on an existing foundation.  249 N.J. Super. 568, 571-77 (App. Div. 1991).  The judge, citing the existing foundation's location near a waterline and the lack of "disruption of other space on the property[,]" concluded the board properly found the "exceptional physical features" of the property justified the variance.  Id. at 577. In affirming, we noted that "a (c)(1) variance may be granted based on more than proof of hardship alone."  Id. at 581.

A-0037-17T3

We reject the Board's counsel's argument before us that plaintiffs' presentation lacked sufficient evidence as to both the positive and negative criteria, and that failure independently provides a basis to affirm the dismissal of plaintiffs' complaint.  As we see it, there was no reason why plaintiffs should have anticipated that the Board would contradict its earlier findings.[3]

As a result, we are compelled to remand to the Board for further proceedings, which it shall conduct with acceptance of its earlier finding regarding the unique nature of plaintiffs' property.  We hasten to add that we express no position on the merits of plaintiffs' request for a (c)(1) side yard variance.  We do note, however, that the Board's resolution lacked any explanation for why a peaked roof that added minimal height to a largely underground structure violated the "essence" of the neighboring open space,

---

[3] Plaintiffs' remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).  Plaintiffs introduced no proof before the Board supporting the claim of equitable estoppel, see Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 152 (App. Div. 2013) (setting forth elements of the claim), nor was it specifically pled in plaintiffs' complaint.  Additionally, the Board's resolution was not "couched in statutory language and lack[ing] any reference to specific facts and circumstances surrounding the application."  N.Y. SMSA, 370 N.J. Super. at 333 (App. Div. 2004).  In short, the resolution was legally sufficient.

A-0037-17T3

while an eighteen-foot structure, albeit several feet more distant from the property line, created no negative impact in 2009.

Although plaintiffs are entitled to present their proofs on remand, we otherwise leave to the Board's sound discretion the conduct of the proceedings, including the nature and extent of additional proofs.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                                A-0037-17T3