**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1033-17T2

BARRY R. LEWIS,

     Plaintiff-Appellant,

v.

BOARD OF ADJUSTMENT
OF THE TOWNSHIP OF
ROCKAWAY, DONALD
STEINBRENNER and BETH
STEINBRENNER,

     Defendants-Respondents.

_____

          Submitted December 4, 2018 – Decided January 17, 2019

          Before Judges Geiger and Firko.

          On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0273-17.

          Barry R. Lewis, Jr., appellant pro se.

          Brach Eichler LLC, attorneys for respondents Donald Steinbrenner and Beth Steinbrenner (Susan R. Rubright, on the brief).

Spector & Dimin, PA, attorneys for respondent Board of Adjustment of the Township of Rockaway, join in the brief of respondents Donald Steinbrenner and Beth Steinbrenner.

PER CURIAM

Plaintiff Barry R. Lewis appeals from a September 18, 2017 Law Division order entering judgment in favor of defendants Board of Adjustment of the Township of Rockaway (Board), Donald Steinbrenner, and Beth Steinbrenner, in this action in lieu of prerogative writs contesting the approval of an application for development to construct a single-family home. We reverse and remand this matter to the Board for adoption of an amended resolution setting forth adequate findings of fact and conclusions of law.

Plaintiff and the Steinbrenners own adjoining parcels in Rockaway. Plaintiff's parcel is developed by a single-family home. The Steinbrenners' parcel is vacant.

The Steinbrenners' parcel was created through a minor subdivision approved by a prior resolution the Board adopted, as amended, in December 2007.[1] The resolution also approved a use variance and associated dimensional

---

[1] Plaintiff also challenged the original prior resolution that created the Steinbrenners' parcel by action in lieu of prerogative writs. The Board was required to adopt an amended resolution following a remand by the Law

variances for premises designated as Block 20901, Lots 66 and 67 and Block 20903, Lots 42 and 43 (the Epstein/Kaminow Resolution). The Epstein/Kaminow Resolution transformed one parcel consisting of two wholly interior lots (Block 20903, Lots 42 and 43) and one parcel consisting of two wholly lakefront lots (Block 20901, Lots 66 and 67) into two parcels both consisting of an interior and lakefront portion. Interior Lot 42 is tied to lakefront Lot 66. Interior Lot 43 is tied to lakefront Lot 67. The practical effect of the Epstein/Kaminow Resolution was to allow for the construction of a residence on each of the interior lots and a boathouse on each of the lakefront lots.

The Steinbrenners are the current owners of interior Lot 43 and lakefront Lot 67, which they purchased from the Epsteins. In accordance with the Epstein/Kaminow Resolution, the Steinbrenners now wish to construct a single-family home on Lot 43, which is located in a R-13 residential district.

On June 30, 2016, the Steinbrenners submitted an application for development to the Board for construction of a single-family home. The proposed development requested numerous dimensional variances pursuant to N.J.S.A. 40:55d-70(c)(1), and a waiver.

---

Division because the original resolution lacked the required findings of fact and conclusions of law.

More specifically, the application requested variance relief from Ordinance 54-30.29.e.5, which requires a minimum front yard depth, and Ordinance 54-30.10.i, which outlines how much vegetation can be stripped from a lot during the construction process. The application also requested a waiver from Ordinance 54-29.13(d)(1), which requires certain slopes to direct water away from buildings.

On August 2, 2016, the Board heard testimony on the Steinbrenner's application at a public meeting. On November 15, 2015, the Board heard additional testimony on the Steinbrenners' revised application and voted to approve the application. The Board adopted the Steinbrenner Resolution memorializing its approval of the application on December 20, 2016. On December 28, 2016, notice of the Steinbrenner Resolution, intended to be compliant with N.J.S.A. 40:55D-10(i), was published; however, the block number was incorrectly listed as 20904, rather than 20903.

Ordinance 54-30.29.e.5 requires a minimum front yard of the lesser of either forty feet or the average of the two abutting lots in R-13 districts. Under Ordinance 54-30.29.e.5, the Steinbrenners were required to have a minimum front yard setback of twenty-four feet. The Steinbrenners ultimately requested,

and the Board granted approval in the Steinbrenner Resolution for, a front yard setback of zero feet.

Ordinance 54-30.10.i.3 prohibits stripping more than thirty percent of the vegetation from slopes of between fifteen and twenty-five percent grade in R-13 districts. In the absence of a variance, the Steinbrenners were allowed to strip 488 square feet of vegetation in this category. The Steinbrenners requested, and the Board granted approval in the Steinbrenner Resolution for, their request to strip 976 square feet or sixty percent of the vegetation in this category.

Ordinance 54-30.10.i.4 prohibits stripping more than fifteen percent of the vegetation from slopes with a grade in excess of twenty-five percent in R-13 districts. In the absence of a variance, the Steinbrenners were allowed to strip 909 square feet of vegetation in this category. The Steinbrenners requested, and the Board granted approval in the Steinbrenner Resolution for, their request to strip 4,617 square feet or approximately seventy-six percent of the vegetation in this category.

Under Ordinance 54-29.13(d)(1), unpaved areas adjacent to buildings must be sloped to direct water away from the building at a minimum slope of five percent for the first ten feet from the building in R-13 districts. Originally, the Steinbrenners proposed swales be constructed approximately one foot from

5

the building. However, the Steinbrenners ultimately requested, and the Board granted approval in the Steinbrenner Resolution for, swales to be constructed approximately one and a half feet from the building.

The Steinbrenner Resolution states the Steinbrenners propose to install double retaining walls along both the easterly and southerly sides of the property. It also states the inner retaining wall will have a maximum height of six feet and that the outer southern retaining wall will be approximately five feet from the property line shared by the Steinbrenners and plaintiff, but it is silent as to the height of the outer retaining wall.

According to the November 4, 2016 memorandum from Dewberry Engineers, Inc. to the Board (the Dewberry memorandum), the proposed outer retaining wall is upwards of nine feet in height and the outer southern retaining wall is nine and a half feet from the foundation of plaintiff's house. The Steinbrenners are to submit a professional engineering certification for the proposed retaining walls, which shall be reviewed by plaintiff, and Peter Black, the Board's engineer, shall review the structural plans prior to construction.

Plaintiff filed a complaint in lieu of prerogative writs demanding judgment reversing the findings of the Board and directing the Board to deny the application for variances. Plaintiff also demanded an award of attorney's

fees and costs even though he represented himself. Plaintiff challenged the Board's approval on the following grounds: 1) the Steinbrenner Resolution and newspaper publication failed to correctly identify the property that was the subject of the application; 2) the Board failed to make the necessary findings to support the c(1) variances granted; 3) the resolution failed to comply with the requirements of N.J.S.A. 40:55D-10(G); 4) the Steinbrenners failed to present adequate evidence for the variance relief granted; and 5) the Board impermissibly delegated the issue of substantial detriment to the public good to the Board's engineer.

The Law Division judge heard oral argument and later issued a judgment and written statement of reasons in favor of defendants. After recounting the facts and procedural history of both the Steinbrenners' application and the Epstein/Kaminow Resolution, the judge engaged in the following analysis:

> Here, the Steinbrenners presented various experts at two public hearings, and revised their Application in order to accommodate concerns brought up at the first public hearing. Specifically, the Steinbrenners changed the slope of their driveway in order to conform with the other driveways in the area. Further, the Steinbrenners moved the footprint of their proposed home ten feet to the left in order to move further from [p]laintiff's property line. Here, two engineers testified as to the Steinbrenners' application, their own engineer, Mr. Gloede, and [the Board's] engineer, Mr. Black. The [Board] then considered the experts' opinions and

7

necessary "competent and credible evidence" in making their decision to grant the variances at issue.

Moreover, the Steinbrenners demonstrated that their [p]roperty met the positive criteria for a 'c' variance, pursuant to N.J.S.A. 40:55D-70(c)(1). Specifically, the [p]roperty is comprised of two lots across the street from one another, and both lots have considerable slopes. Expert testimony supports the finding that the [p]roperty has "exceptional topographic condition[s]." Further, the Steinbrenners met the necessary negative criteria by establishing there would be no substantial detriment to the public good and their variances will not substantially impair the intent and purpose of the zone plan and zoning ordinance. Indeed [to] the extent there may be a danger of disturbance to [plaintiff's] property, such danger was remedied by the requirement that any excavation and/or retaining wall would be subject to a "professional engineering certification." The prior property owners, the Epsteins, had a planner who opined that the topographic conditions of the [p]roperty as a split lot "makes the lot suitable for the neighborhood and will not impair the intent and purpose of the zone plan or be a detriment to the public good." Further, the split lot allows for building on the interior lot as consistent with the neighborhood and in compliance with the zoning plan. Plaintiff fails to make a showing of abuse of discretion, as the decision of [the Board] is supported by expert testimony and necessary consideration by [the Board] of the relevant positive and negative criteria in granting variances.

[(citations omitted).]

This appeal followed. Plaintiff argues the Law Division judge erred, claiming the action of the Board was arbitrary and capricious because: 1) the

8

resolution is deficient on its face by failing to make the necessary findings to support the c(1) variances granted; 2) the resolution is substantively deficient and fails to comply with N.J.S.A. 40:55D-10(G) by failing to set forth adequate factual findings and conclusions of law; 3) the applicants failed to present substantial, competent evidence to prove the elements required to obtain the variances sought; 4) the Board impermissibly delegated its obligation to determine the positive and negative criteria to its professionals, and impermissibly delegated the issue of substantial detriment to the public good to its engineer for post-hearing determination; and 5) the applicants failed to present competent, credible evidence to support relief under N.J.S.A. 40:55D-10(G), warranting a reversal without remand for further proceedings. Plaintiff additionally argues the Law Division judge erred by independently reviewing the record and reaching his own findings, in part based on improper considerations.

"Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division." Advance at Branchburg II, LLC v. Branchburg Tp. Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013) (citing Bressman v. Gash, 131 N.J. 517, 529 (1993)). "We defer to a municipal board's factual findings as long as they have an adequate basis in the record."

9

Branchburg, 433 N.J. Super. at 252. However, a zoning board's legal determinations are subject to de novo review. Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App. Div. 2015). "[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999).

"[W]hen a party challenges a zoning board's decision through an action in lieu of prerogative writs, the zoning board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). "Courts give greater deference to variance denials than to grants of variances, since variances tend to impair sound zoning." Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (App. Div. 2001); see also Branchburg, 433 N.J. Super. at 253. "[T]he burden is on the challenging party to show that the zoning board's decision was 'arbitrary, capricious, or unreasonable.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)).

The New Jersey Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136, imparts authority to boards of adjustment for the grant of variances when

(a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to [N.J.S.A.40:55D-62] would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship[.]

[N.J.S.A. 40:55D-70(c)(1).]

However, "[n]o variance or other relief may be granted . . . , including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. "The applicant bears the burden of proving both the positive and negative criteria." Ten Stary Dom. P'ship v. Mauro, 216 N.J. 16, 30 (2013).

N.J.S.A. 40:55D-10(g) "requires a municipal agency to reduce each decision on any application to writing in the form of a resolution that includes

findings of fact and conclusions of law." N.Y. SMSA, LP v. Bd. of Adjustment, 370 N.J. Super. 319, 332 (App. Div. 2004). To that end,

> [t]he factual findings set forth in a resolution cannot consist of a mere recital of testimony or conclusory statements couched in statutory language. Rather, the resolution must contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the applicant's variance request in accordance with the statute and in light of the municipality's master plan and zoning ordinances. Without such findings of fact and conclusions of law, the reviewing court has no way of knowing the basis for the board's decision.

> [Id. at 332-33 (citations omitted).]

Thus, resolutions that state their conclusions in a "'summary fashion'" have "repeatedly been recognized as deficient by the courts." Id. at 333.

Moreover, the reviewing court should not incorporate statements contained in the hearing transcripts and made by individual board members into the resolution. Ibid. "The statements of individual Planning Board members, 'represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact. It is the Resolution, and not board members' deliberations, that provides the statutorily required findings of fact and conclusions.'" Rocky Hill Citizens for Responsible Growth v. Planning

A-1033-17T2

Bd. of Borough of Rocky Hill, 406 N.J. Super. 384, 413 (App. Div. 2009)

(quoting N.Y. SMSA, 370 N.J. Super. at 334).

Here, after laying out the Steinbrenners' requested variances and waivers,

the Steinbrenner Resolution states:

> 7. At the public meeting on November 16, 2016, the applicant was represented by Susan Rubright, Esq., of the law firm of Brach Eichler, LLC, who introduced the first witness, Mr. Gloede, a professional engineer located in Oakridge, New Jersey, who testified that the property is currently a vacant lot; that the applicant will be constructing new retaining walls along the north, east and south sides of the proposed residential dwelling; that the landscaping will remain the same; and the applicant will comply with all of the Engineer's comments and will put a fence on top of the retaining wall, as discussed.
>
> 8. The next witness called by the applicant was Peter Hestevold, who is the general contractor on the project, who informed the Board that the retaining walls will be designed by a structural engineer.
>
> 9. The final witness called was Jeff McEntee, the applicant's architect, who discussed with the Board all of the architectural aspects of the proposed dwelling, deck and porch.
>
> 10. The application has been reviewed by the township professionals and their reports and findings are incorporated herein as though set forth herein at length verbatim.

13

11. It is a finding of the Rockaway Township Zoning Board of Adjustment that the application for various "c" variances and waiver can be granted without substantial detriment to the public good and without impairing the intent and purpose of the Township Zoning Ordinance.

The Steinbrenner Resolution makes no mention of the positive criteria.

The factual findings set forth in the Steinbrenner resolution amount to no more than a cryptic summary of the testimony of three of the four witnesses presented by the applicants and a single conclusory statement about the negative criteria that the Board has "couched in the conclusionary language of the statute." Harrington Glen, Inc. v. Bd. of Adjustment of Leonia, 52 N.J. 22, 28 (1968). Thus, "[a]t a minimum, the legal insufficiency of the resolution in this case warrants a remand to the Board for reconsideration and specific factual findings." N.Y. SMSA, 370 N.J. Super. at 335 (citing Smith v. Fair Haven Zoning Bd. of Adjustment, 335 N.J. Super. 111, 123 (App. Div. 2000)).

In addition, the discrepancies between the Steinbrenner Resolution, the reports prepared by the Board's professionals, and the Law Division judge's statement of reasons also warrant remand.

Ordinance 54-30.10.i.2 prohibits stripping more than forty percent of the vegetation from slopes with a grade of less than fifteen percent in R-13 districts.

In the absence of a variance, the Steinbrenners would only be allowed to strip 200 square feet of vegetation in this category from interior Lot 43.

There is no mention of Ordinance 54-30.10.i.2 in the Steinbrenner Resolution or the three memoranda prepared by Burgis Associates, Inc., the community planner hired by the Board (the Burgis memoranda). Ordinance 54-30.10.i.2 is mentioned by Dewberry. However, according to the Dewberry memorandum, while the Steinbrenners originally sought permission to strip 5,586 square feet of vegetation in this category, the revised plans propose to strip 5,593 square feet of vegetation in this category. Nevertheless, a fair reading of the judge's statement of reasons gives the impression the Steinbrenners requested, and the Board approved, the Steinbrenners' request to strip 5,586 square feet of vegetation.

The Steinbrenner Resolution is also inconsistent on its face. It states Gloede testified "that the landscaping will remain the same." However, the Steinbrenners sought permission to strip thousands of square feet of vegetation from Lot 43. Since landscaping can be defined as modifying an area by altering the plant cover,[2] the landscaping on Lot 43 will not remain the same.

---

[2] https://www.merriam-webster.com/dictionary/landscaping.

Finally, unless Lot 43 can qualify as an "existing platted substandard lot[]," the Steinbrenner Resolution is deficient for its failure to consider or grant side yard setback relief. The Steinbrenner Resolution states "the southerly side yard setback has been increased from [eight] feet to [eighteen] feet, while the northerly side yard setback has been reduced from [sixteen] feet to [six] feet." Ordinance 54-30.29.e.6 specifies the minimum side yard depth in R-13 districts and requires:

> two (2) side yards, and no side yard shall be less than ten (10) feet; provided, however, on existing platted substandard lots, the total width of the two (2) side yards shall not be less than fifteen (15) feet, and no side yard shall be less than five (5) feet. Notwithstanding the above, no building shall be permitted to be erected on a substandard lot if such building would be closer than fifteen (15) feet to an existing building on an abutting lot.[3]

Yet, there is no mention of a variance of this requirement imposed by Ordinance 54-30.29.e.6 in the Steinbrenner Resolution. Nor is it mentioned in the Law Division judge's statement of reasons or the Dewberry memoranda. The only references to the side yard requirements are in the Burgis memoranda, and those are mere generalized references to the Steinbrenner's need to ensure that the side

---

[3] Land Use and Dev. Regulations of the Twp. of Rockaway, 273 (Nov. 1, 2014), http://www.rockawaytownship.org/DocumentCenter/View/1271/Chapter-LIV-Land-Use-and-Development-PDF-1648-KB (last visited Jan. 2, 2019).

yards satisfy the requirements for R-13 districts. Notably, both the Burgis memoranda and the Steinbrenners' plans seem to be treating this as an existing platted substandard lot. However, to qualify as an "existing platted substandard lot," at a minimum, Lot 43 would have needed to be a buildable lot before August 1999.[4] Since Lot 43 was created by subdivision from Lot 42 in the Epstein/Kaminow Resolution in 2007, dual ten foot side yards are required.

We are constrained to reverse the judgment entered by the Law Division, vacate the Steinbrenner Resolution, and remand this matter to the Board for adoption of an amended resolution containing the statutorily mandated findings of fact and conclusions of law based on the proofs submitted. We do not retain jurisdiction.

In light of our ruling, we do not reach the additional arguments raised by plaintiff.

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Land Use & Dev. Regulations of the Twp. of Rockaway at 162.

A-1033-17T2